*578 Whaley, Judge,
delivered the opinion:
This is one (Senate bill 1524) of a number of cases referred to this court under Senate congressional reference, Resolution No. 107, 67th Congress, 1st session.
The plaintiff is a West Virginia corporation engaged in the business of manufacturing chewing gum and was, in the year 1918, a tenant of the Bush Terminal Buildings Company under four leases, all of which expired August 1, 1921. The leases covered 60,748 square feet of space in Buildings No. 5 and No. 6 of the Bush Terminal property in Brooklyn, New York. On June 18, 1918, the Navy Department, acting under authority of the act of March 4, 1917, ch. 180, 39 Stat. 1168, 1192, 1193, and the act of June 15, 1917, ch. 29, 40 Stat. 182, served notice upon the Bush Terminal Build *579 ings Company, a copy of which was also served upon the plaintiff as the tenant of the Bush Terminal Buildings Company, that the Government required the use of certain of its buildings including those in which the plaintiff was a tenant and demanded possession to be delivered on or before December 1, 1918. The notice also carried the provision that the Government would take over all or any portion named in the commandeer order at any time possession could be given before the first of December. Immediately upon receipt of the notice the plaintiff proceeded to secure another location for its manufacturing plant and succeeded in obtaining certain premises which are referred to in the record as the Metropolitan Avenue plant. (Finding XIY.) The purchase of these premises was consummated on August 12, 1918. About a month thereafter, or on September 13, 1918, plaintiff was notified that the commandeer order served by the Navy Department for possession of these buildings had been canceled as of September 9, 1918. On or about September 16, 1918, plaintiff commenced moving its machinery and other equipment from the Bush Terminal buildings to the Metropolitan Avenue plant, and on or about January 25, 1919, the removal was completed.
Coincident with the requisition order the Navy Department had set up a board of appraisers to determine the rental value of the premises to the owner, and the compensation which should be paid to tenants for losses sustained. On June 21, 1918, two days after plaintiff received the requisition order, plaintiff was required to furnish the above board with a detail list of personal property possessed by plaintiff and of machinery installed inside its lease, and the plaintiff at once supplied this information, and later, on July 9, 1918, the commandant of the third district in acknowledging receipt of this confirmation, said:
“ The filing of the questionnaire by you does not in any way act as a stay, or release you from the obligation to vacate the premises on or before December 1, 1918.
“ It is the intention of the board to make a personal visit to each plant affected by this commandeer, for the purpose of verifying such statements as have been filed, and this, you appreciate, will take some time, as there are some sixty-odd firms affected by the commandeer.
*580 “When and as soon as you have made definite arrangements to vacate the space now occupied by you, kindly notify the board as to the date upon which you expect to remove from the premises now occupied.”
Again on September 8, 1918, accredited representatives of the Government personnally visited the plaintiff and requested that the vacation of its lease be expedited. A representative of the Government personally visited the leased quarters of the plaintiff to verify and check over plaintiff’s return of property and machinery located therein, and for 2 months and 20 days the requisition order was as completely effective as to the plaintiff as though it had been consummated by court procedure in times of peace.
The plaintiff is now suing to recover just compensation for the taking of its leasehold interest in the Bush Terminal Buildings, and contends it is entitled to recover for the following items:
(1) The value of the unelapsed period of the leases.
(2) The value of certain fixtures which were incapable of being detached and removed to the new plant.
(3) The cost of removal; the damages incident to the change of location, including the charges for removing and reinstalling equipment; salaries of officers and employees for time spent in moving, and overhead expenses for one day when the plant Vas idle.
(4) The difference between the rate paid for fire insurance at the Bush Terminal Buildings and that paid at the new plant during the unexpired term of the leases.
(5) Interest on investment, interest on mortgage, insurance, depreciation, and taxes in connection with the new plant for the period from July 29, 1918, to January 25, 1919.
It is true that the Navy Department did not enter into physical possession at any time of the space leased by the plaintiff but, due to the commandeer order, the plaintiff was forced out of its leaseholds and compelled to seek other premises. It was in compliance with the commandeer order that the plaintiff acted in good faith to deliver the premises. Ever since the decision of the Supreme Court in Duckett & Co. v. United State, 266 U. S. 149, and Phelps v. United States, 274 U. S. 341, it has been settled law that the use of *581 property can be taken as well as title to the property, and for the use just compensation must be paid, and also that when just compensation is allowed, in order to make the owner whole, interest must be included from the date of taking to the date of payment, not as interest but as just compensation. These cases further leave no doubt that this court has jurisdiction, under congressional reference, to render judgment on this class of claims.
The naval appropriation bill of March 4, 1917, 89 Stat. 1168, 1192, 1193, and the urgent deficiency bill of June 15, 1917, 40 Stat. 182, under which the commandeer order was issued, gave to the President extraordinary powers in the matter of requisition and taking of private property. The right to requisition and take over any factory or part thereof, without taking possession of the entire building, was a part of the power conferred. It was emergency legislation and an order issued thereunder was mandatory. It was to be obeyed. The one restrictive provision was that, in the event of the exercise of the authority given, the President was to fix the amount of just compensation, which, if unsatisfactory, could be accepted to the extent of 75 per cent and the desired balance sued for in this court. The President was not bound by legal formalities or procedure, but the exercise by him of the authority granted was as effective in character as if formal condemnation or procedure had been pursued, and the mandatory provisions of the legislation left no option upon the part of anyone receiving a requisition order except to consider himself divested of all present ownership, discretion, or title to the property or materials desired, inconsistent with the President’s exercise of the power and authority conferred by the acts.
The extraordinary power to be exerted under the acts was not burdened with court procedure. There can be no question in this case that all the formalities requisite (if they can be called that) were complied with by the Government, so far as issuance of the order and service of notice is concerned. The subject matter of the requisition, that is, the contracts of lease (the Navy Department was to pay rent), was one that could be and was requisitioned. The case of Brooks-Scanlon Corp. v. United States, 265 U. S. *582 106, 120, conclusively decided that contracts and contract rights were under the statute fit subjects of expropriation. See also Duckett v. United States, 58 C. Cls. 234, 250; 266 U. S. 149, 151. Under the statutes physical possession was not necessary to validate such an expropriation. In fact, in many cases, there was never any physical possession. The nature of the case did not always require it, nor was it contemplated. The requisition itself with its attendant notice, transferred the contract and the contract rights, and it was obligatory.
The very purpose of the statutes was expedition. The effect of requisitions thereunder was immediate, in no way deferred by refusal or delay upon the owner’s part to comply with them.
It is undeniable, from the facts found, that the Navy Department was anxious to gain occupancy of the premises as soon as possible. The course taken both by plaintiff and defendant plainly shows that there was no question as to the effectiveness of the order. The defendant required obedience, and the plaintiff proceeded to obey. The plaintiff could not have sublet the premises, even with the landlord’s consent. Its lease had been taken from it, it was no longer lessee, and it had nothing it could assign.
It was physically impossible for the Government immediately to occupy the premises. The course pursued was eminently practical. That the Government should simultaneously with service of notice enter upon the premises and physically oust this tenant, is hardly to be imagined. The very terms of the order precluded such a course. The order effectively expropriated plaintiff’s leases. In all the circumstances of the case it can not be said that the Government omitted any act which could have been a more complete exercise of its power and authority under the statutes which authorized the procedure.
The Government could not recall what it had done. That was consummated. It could only go through the form of canceling the requisition order, and refrain from further exercising the right of the requisitioned tenancy. This course was adopted. That the defendant had theretofore *583 actually exercised the right of tenancy in requiring plaintiff to vacate seems certain.
The plaintiff is entitled to recover just compensation for the value of its leases from January 25, 1919, the date it surrendered the premises, to the end of the term of its leases, namely, August 1, 1921. Taking into consideration the character and location of the space in question and the facilities afforded the tenant, the general condition in and about the port of New York regarding space for manufacturing purposes, and the rates at which like space was then held and being rented by the Bush Terminal Buildings Company, the just compensation to be paid the plaintiff for the unexpired term of the leases is $40,979.14, together with interest from January 25, 1919.
The plaintiff claims, in addition, the cost of moving its stock, the dismantling and removing of its equipment from the old to the new plant, and the cost of reinstalling the same; in other words, the cost of moving, together with the salaries and wages of certain employees for the time spent in moving, the idleness of its plant for one day, and the value of fixtures which could not be removed. These are set out in detail in Finding XX. The plaintiff was not the owner of the fee, but a tenant holding under leases which contained no right of renewal. At the termination of the leases it would have had to move to a new location. The cost, labor, and expense of dismantling, removing, and reassembling the appliances, the loss of fixtures, idleness of plant and overhead, would all have been incurred at that time. The removal at an earlier date imposed no additional burden. Mayor v. Gamse & Bro., 132 Md. 290.
Just compensation is fixed for the fair value of the property requisitioned at the time of the taking. It does not include consequential damages resulting from forced removal of property not taken by the Government. The plaintiff’s right to occupy and use certain footage, or space, in the buildings was taken over, nothing more. The liability of the Government is for the value of this right given by the leases to the end of the period mentioned in them. The *584 business was not taken over. The expenses incurred by the plaintiff in moving from the terminal to the new site were those which it would have sustained at the termination of its leases, consequential in their nature, and for which there is no recovery.
In Bothwell v. United States, 254 U. S. 231, the lands of a cattle ranch were condemned and as a consequence a sale of the cattle was forced, but it was held that the Government was not responsible in damages for the loss due to the enforced sale of the cattle or the destruction of business.
In Southern Products Co. v. United States, 61 C. Cls. 801, the plaintiff was ordered to remove a large quantity of cotton from the Bush Terminal Buildings, which had been taken over by the War Department under requisition, and the plaintiff sued to recover the removal costs and damages sustained by reason of the cotton being injured by exposure to the weather. No recovery was allowed on the ground no property was taken and the expense was incident to its removal. See also Gershon Bros. Co. v. United States, 284 Fed. 849, and United States v. Meyers, 190 Fed. 688.
There is no claim made by the plaintiff that its business was taken. On the contrary, it is seeking to recover a loss it claims to have sustained by reason of the change from one location to another. Whatever injury to business this may have been, for such an injury the Government is not liable.
In Mitchell v. United States, 267 U. S. 341, it it held “ No recovery therefor can be had now as for a taking of the business. There is no finding as a fact that the Government took the business, or that what it did was intended as a taking. If the business was destroyed, the destruction was an unintended incident of the taking of land. There can be no recovery under the Tucker Act if the intention to take is lacking.”
There was no attempt to take the business of plaintiff, and any injury caused thereto was incidental to taking over the use of the premises on which the business was conducted, without intention to injure or destroy the business itself.
These are all inconveniences and expenses incident to the surrender of the possession and are not elements to be considered in determining the compensation to which the *585 owner is entitled. The title to all property is held subject to the implied condition that it must be surrendered whenever the public interest requires. De Laval Co. v. United States, 284 U. S. 61, 73; Nitro Powder Co. v. United States, 71 C. Cls. 369, 374.
The plaintiff has brought to our attention several cases which have held consequential damages recoverable. All these cases involve State statutes permitting municipalities and railroads to condemn but no case has been cited which involved the exercise by the United States of its power of Eminent domain in which consequential damages have been allowed, and the statutes under which this property of the plaintiff was taken are silent as to such damages. Just compensation alone is provided and the cases cited, sufra, fix the basis of what shall be included in those two words.
The items mentioned in Finding XX are disallowed. The plaintiff is entitled to recover just compensation for the value of its leases from January 25, 1919, to August 1, 1921, which is found to be $40,979.14, with interest from the former date.
It is so ordered.
Williams, Judge, and Booth, Chief Justice, concur.