Hillsborough,
No. 4539.

EDGCOMB STEEL OF NEW ENGLAND, INC. *v.* STATE.

Argued January 2, 1957.

Decided March 26, 1957.

*Sheehan, Phinney, Bass, Green & Bergevin (Mr. Green* orally), for the plaintiff.

*Louis C. Wyman,* Attorney General, *Elmer T. Bourque,* Assistant Attorney General and *George F. Nelson,* special counsel (*Mr. Nelson* orally), for the State.

*McLane, Carleton, Graf, Greene & Brown (Mr. Brown* orally), as *amici curiae.*

DUNCAN, J. I. The allegations of the plaintiff's petition that it

was awarded $174,000 on November 24, 1953, which it agreed to accept were denied by the answer of the State filed on June 19, 1954. For further answer the State alleged that those transactions were "void" and "moot" by reason of subsequent negotiations, and a taking of a lesser portion of the plaintiff's land than was contemplated in 1953. A pretrial order was entered on September 22, 1955, following a hearing before *Grimes*, J., by which it was stipulated that the action was an appeal from the taking of May 20, 1954, which was agreed to be the "date of taking."

Shortly before trial, on November 18, 1955, the plaintiff by further pleading denied the allegations of the answer that the earlier proceedings were void and moot, and alleged that its rights by reason of those proceedings had neither been waived nor affected by the subsequent taking of a smaller tract. To this pleading the State replied on November 21, 1955, alleging among other things that no taking had been effected until May 14, 1954, and that prior to filing a return on that date, the commissioners were free to modify or reverse the conclusion to award $174,000 alleged by the plaintiff to have previously been reached.

On the same day and prior to empaneling of the jury, the plaintiff filed its motion for a verdict in its favor for $174,000 with interest from November 24, 1953. The motion was denied subject to exception, and after the jury was drawn, the Court ruled that the only issue for trial was the appeal from the award assessing damages of $20,500 for the taking of May 20, 1954. The plaintiff's motion to amend the prayer of its petition to seek as alternative relief an award of $174,000 with interest was denied.

Later, in the course of the trial but not before the jury, the plaintiff offered in evidence a letter dated November 24, 1953, from the commissioners to the plaintiff stating: "The Commission . . . award to [the plaintiff] . . . $174,000 for any and all damages . . . by the construction of said highway"; and also offered minutes of a meeting of the board of directors of the plaintiff held on November 27, 1953, at which it was voted to accept the award of $174,000. The evidence was offered in support of the position taken at the commencement of the trial, and as proof of "an admission" by the State "as to the element of damages . . . involved." The State's objection to receipt of the evidence was sustained, subject to the plaintiff's exception.

In support of these exceptions the plaintiff argues before this court that the letter of November 24, 1953, was an award, binding

upon the State, which operated to vest in the State "the rights to the land taken . . . subject only to the [plaintiff's] right of appeal," and in the plaintiff, the right to payment of the award. It further argues that the plaintiff's acceptance of the award created "a valid and binding contractual obligation" on the part of the State; and that the action of the Trial Court was "in effect . . . a nonsuit on the pleadings."

Assuming the effect of the Trial Court's action to have been as the plaintiff suggests, that action was proper. The plaintiff's petition was essentially an appeal from the taking of May 20, 1954, which was a taking of a tract two hundred feet in width. At the time of the letter received from the Commission in November, 1953, a taking of a three hundred foot tract had been under consideration. The alleged award of $174,000 which related to this original proposal was not a taking. The proceedings are governed by RSA ch. 233. See RSA 257:1(b), 8; 236:2. It is not claimed that any return as required by RSA 233:11 "describing the [highway] and the width thereof, and their assessment of the damages" was then filed in support of the $174,000 award, nor is it claimed that any tender of payment of that amount was made (s. 12) or that a certificate of such tender was ever filed as required by s. 16. RSA 233:12 provides that no land or other property shall be "appropriated or used" for making a highway until the damages have been paid or tendered as provided by statute.

It is settled that in condemnation proceedings by administrative action, such as these were, the filing with the Secretary of State of the return of the layout and assessment which is required by RSA 233:11 is essential to the legal laying out of the highway. *State* v. *Michaud*, 98 N. H. 356. "In effect, the return is the laying out." *Brown's Petition*, 51 N. H. 367, 368. "The words 'laying out' and 'taking' in a statute relating to eminent domain . . . have the same meaning . . . . " *Littleton* v. *Company*, 73 N. H. 11, 16. The return is a record of the extent of the land being condemned, and no title can vest in the State and no right to damages in the landowner before the return is filed. Even where a highway was actually laid out and later discontinued before being built, the landowner was held entitled to no more than his actual damage. *Beard* v. *Henniker*, 70 N. H. 197.

The record discloses no taking before that of May 14, 1954, when the commission filed its return of a taking of 200 feet of plaintiff's land, as to which a certificate of tender was filed six days later.

RSA 233:11, 16. The date of taking was fixed by agreement of the parties as May 20, 1954. It was a taking of 200 feet. The alleged award of $174,000 was without legal effect. *State* v. *Michaud, supra.*

The cases of *Clough* v. *Unity,* 18 N. H. 75, and *Pollard* v. *Moore,* 51 N. H. 188, relied upon by the plaintiff require no different conclusion. The proceedings there involved were wholly different in nature from those for condemnation by administrative order which are now before us. The former case was brought to enforce rights held to arise upon confirmation by the court of a report awarding damages. The latter case involved the right of the plaintiff to become nonsuit in an action under the flowage act. Both were cases of condemnation by judicial proceeding. See 6 Nichols, Eminent Domain, *s.* 24.11. Even in such a proceeding, no property is transferred merely by the determination of the damages. *Nashua Railroad* v. *Lee,* 55 N. H. 568, 570. See *Fiske* v. *Chesterfield,* 14 N. H. 240. The proceedings before us are controlled by the provisions of the statute under which the State proceeded, which have previously been considered. What was said in *Opinion of the Justices,* 98 N. H. 533, concerning awards was directed to questions concerning the authority of the Governor and Council with respect to awards by a commission, and had no reference to the question of when such awards became binding.

The argument that the transactions of 1953 were admissible to prove a contract obligation is not more convincing. While the statute authorized acquisition of land by purchase (RSA 236:2), there is no suggestion that the plaintiff was prepared to sell, and the letter of the commission which was excluded has none of the attributes of an offer to buy. The plaintiff's vote to accept the "award" created no rights against the State.

The letter was hearsay evidence (see *Interstate Bridge Authority* v. *Ham Estate,* 92 N. H. 277, 283) and inadmissible to prove the value of the three hundred foot tract then under consideration. *Howe* v. *Howard,* 158 Mass. 278. See 2 Lewis, Em. Dom. *s.* 669. It was not an admission by the State but only evidence of the conclusion of another tribunal. *Arlington Mills* v. *Salem,* 83 N. H. 148, 159. The plaintiff's exceptions are overruled.

II. The law has long been settled in this jurisdiction that in eminent domain proceedings the owner of land condemned is entitled to damages for the taking measured by the difference between the value of his land after the taking, and what it would

have been worth on the day of the taking if the taking had not occurred. *Wright* v. *Company*, 75 N. H. 3, 6; *Swain* v. *Company*, 76 N. H. 498, 503, and cases cited. "In ascertainment of the value of the property invaded, [he] is entitled to have it appraised for the most profitable purpose, or advantageous use, to which it could be put on the day it was taken." *Emmons* v. *Company*, 83 N. H. 181, 184; *Low* v. *Railroad*, 63 N. H. 557. The value to be determined is fair market value, which may properly be defined as "the price which in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy, taking into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining." *Davis* v. *State*, 94 N. H. 321, 322. The rule is the same whether an entire tract of land is taken, or it is severed by the taking. "The actual damage caused . . . is not limited to that part which is taken and appropriated to the public use . . . and the injury to the whole tract may much exceed the value of the land actually taken." *Petition of Mt. Washington Road Co.*, 35 N. H. 134, 145, 146. See also, *Adden* v. *Railroad*, 55 N. H. 413, 414.

The applicable principles were not in dispute in these proceedings, but the State by its exceptions questions the admissibility of much of the plaintiff's evidence. It excepted to the receipt of evidence concerning the survey of the market made by the plaintiff prior to the purchase of its property in question, and of its plans for future expansion of its plant on the land condemned. There was evidence that pending the taking the plaintiff obtained an option on land adjoining on the north which it thereafter acquired and on which it proposes to erect additional storage space. The State objected to the use of a plan showing the contemplated expansion on this northerly tract and to evidence of changes which would be required in the property not taken in order to permit such expansion.

The plaintiff's original plan as disclosed by the evidence called for the construction of additional bays to the west of its building to provide storage facilities as required. The construction of four such bays over a period of ten years was contemplated. Sufficient office space to permit the handling of such increased volume was provided in the original building. As a result of the taking, the area available for expansion to the west would permit the construction of only two bays. Thus it could be found that the taking posed for the plaintiff the question of whether to seek a

wholly new location, or to partially expand within the area remaining to the west, seeking additional space elsewhere, or to plan its entire expansion as a unit to the north.

There was testimony that the use made and planned by the plaintiff before the taking was the most advantageous use which could be made of its land and building. The evidence concerning the volume of business done after establishment of the plant and of the plaintiff's plans for expansion over a ten-year period ending in 1962 was relevant to the issue of the market value of its holdings for the most advantageous use to which they might be put, "having regard to the existing business or wants of the community, or such as [might] be reasonably expected in the immediate future." *Emmons* v. *Company, supra,* 189. The evidence of the course of the plaintiff's business up to late 1955 was such as to permit a finding that its original expectations as to use over the ten years following purchase were reasonable, and that that period was "immediate" and not remote. The plaintiff's evidence thus tended to prove that the land west of its building, which was available for expansion before the taking, was a substantial factor in the value of its property as a whole before condemnation.

The State as condemnor was not necessarily to be held liable for damages upon the theory that the value of what remained after condemnation was substantially reduced because it was no longer usable for the purpose for which it was designed. If by provision for expansion in another direction the most advantageous use of the plaintiff's land could still be preserved, its value was to be determined in the light of that prospect. *Barker* v. *Company,* 78 N. H. 571, 575, and cases cited. 4 Nichols, Eminent Domain, (3rd *ed.*), s. 14.22. The evidence relating to the feasibility of expanding to the north in order to effect the most advantageous use of the part not taken was proper to be considered by the jury in determining the value of what remained. The prospect of using the building to its fullest advantage by constructing additional warehouse space to the north might be found at the time of the taking "to have probably affected the public mind, and therefore to have enhanced the price which a purchaser might be expected to give" (*Emmons* v. *Company, supra,* 185) for the holdings not condemned. The fact that the plaintiff acquired the land to the north for that very purpose served to demonstrate the reality of the prospect.

The jury was properly instructed that additional costs occasioned by expansion to the north could be "considered only to the extent

that prospective purchasers would take them into consideration in determining what they would pay for the remaining property after the taking . . . [or] whatever influence that would have on the fair market value of the property." As was said in *Olson* v. *United States*, 292 U. S. 246, 256, 257, while "physical adaptability alone cannot be deemed to affect market value . . . a reasonable possibility that the owner could use his tract together with the other . . . lands" is evidence to be considered if shown to be "reasonably probable [and not] mere speculation and conjecture." See also, *Baetjer* v. *United States*, 143 F. (2d) 391, 396; *Valentino* v. *Commonwealth*, 329 Mass. 367, 370.

It was for the jury to say whether the possible use of the plaintiff's building in conjunction with storage space to the north was one arising out of the special adaptability of the building which would affect the market value of the property; or whether it was so speculative and unsubstantial as to have no relation to market value at the time of the taking. *Emmons* v. *Company, supra,* 185. "All this was relevant to the issue in the case, for if additional land could be acquired upon which respondent's enlarged plant could be completed and operated as satisfactorily as would have been the case upon the land originally bought for that purpose, then obviously there would have been no injury done the respondent's property through hindrance to expansion, and its total damages could hardly have exceeded the value of the land actually taken by the appropriation." *St. Louis* v. *Paramount Shoe Mfg. Co.,* 237 Mo. App. 200, 218.

It is true that the evidence to which the State excepted was first received upon the hypothesis that the plaintiff would also show "the difference between whatever it cost to expand in that direction as compared to the cost of expansion as they claim they originally planned." The difference in cost was never shown, and no figures were introduced by which the comparative costs could be determined. However, expert witnesses testified that their opinion as to the value of the property remaining after the taking was based in part upon consideration of the expense of adapting it, by expansion to the north, to what they considered to be the most advantageous use. Their testimony on values was evidence from which the jury could determine the effect which the probable cost of expansion to the north would have upon the market value of the property after the taking, even though comparative costs were not directly before them. The State's motion to strike all of the

testimony dealing with expansion to the north on land acquired after the taking was properly denied.

The well established principle that the value of the land taken is not to be determined according to its value to the owner did not make the evidence incompetent. It could be found that the value of the property for sale for its most advantageous use was the value which would attach to it for the use which the owner proposed to make. "If the property is available to others for use which he has made of it, such transmissible use is of material bearing in estimating value." *Trustees &c. Academy* v. *Exeter,* **92 N. H.** 473, 486. The State had the benefit of instructions that the plaintiff was not entitled to recover damages for any additional costs of adapting the residue to the proposed use, or for any diminished efficiency or increased cost of operation which might result therefrom; and that these were merely factors to be considered in arriving at a fair market value. The evidence of an advantageous use did not become inadmissible merely because the plaintiff itself considered it to be advantageous.

It is urged by *amici curiae* that in cases where rearrangement or revision of facilities is made necessary for efficient use of a part of the property not taken, the cost of such rearrangement should be recoverable as damages, or as a distinct element of the required compensation. This contention, they recognize, is contrary to principles established in this jurisdiction and enunciated in *Ranlet* v. *Railroad,* 62 N. H. 561. It was there held that evidence of the expense of removing personal property from the land condemned, and of the value of the removed property after removal was properly excluded. "The inconvenience and expense incident to the surrender of the possession are not elements to be considered in determining the damages to which the owner is entitled." *Id.,* 564. This view accords with general authority elsewhere. 18 Am. Jur. 894, Em. Dom., *s.* 255; 29 C. J. S. 919, Em. Dom., *s.* 111; 4 Nichols, *s.* 13.13.

The statute under which these proceedings are brought provides that the taking may be of land "or other property" (RSA 233:2, *et seq*) and that damages sustained by the owner of such "other property" (*s.* 11) are to be assessed. Clearly if personal property is condemned, the State must pay for it. But the statute does not require compensation for property "damaged" for public use, as has been the case in most instances where the cost of removal of personal property has been held recoverable. See 4 Nichols, *supra,*

*ss.* 13.13, 14.2471(2);1 Orgel, Valuation under Eminent Domain (2nd *ed.*) *s.* 69. The Legislature might have provided for recovery of damages for removal or rearrangement of property but it did not do so.

Fixtures which are so attached to real estate condemned as to be a part of it, are to be compensated for. See 4 Nichols, *supra, s.* 13.12. Trade fixtures not so attached, which are removed, stand like other personal property. Cost of removal is not an element of the damage. The owner of the property, if also the owner of the land, must be compensated by the value paid for the land taken, which necessarily includes the value of his right to use the land for the storage or use of his personal property thereon. See 1 Orgel, *supra, s.* 68, note 2. If the owner is a tenant, he is compensated in the same way. See *Woolworth Company* v. *Berlin,* 82 N. H. 153. "In its final analysis, the property in any thing consists in the use. *Eaton* v. *Railroad,* 51 N. H. 504, 511; *Swain* v. *Company,* 76 N. H. 498. But as the value of property is ordinarily expressed in a lump sum, so a partial deprivation of the use of it is often expressed in the like terms." *Barker* v. *Company,* 78 N. H. 571, 573.

The same rule applies where rearrangement or reconstruction of a building or facility is occasioned by a taking. The question to be determined is "how much less is the tract as a whole worth with a piece taken out of it" taking "into consideration every element which a purchaser willing but not obliged to buy would consider." 4 Nichols, *supra, ss.* 14.232, 14.243; *Swain* v. *Company, supra,* 76 N. H. 498, 503.

III. The State objected to testimony on behalf of the plaintiff by the witness Stearns, upon the ground that he was not qualified to express an opinion as to the "damages [caused by the taking] to the market value of Edgcomb's remaining holdings in Nashua." The objection was overruled subject to exception and the witness gave as his opinion that the property was worth $320,000 before the taking and $160,000 after. The State argues that the Trial Court could not reasonably find that the witness had "special and peculiar knowledge" which would aid the jury. *Dole* v. *Johnson,* 50 N. H. 452, 454.

The witness was examined at length, and by both counsel, concerning his qualifications. We think that it sufficiently appeared that he was qualified both by study and experience, and that the Court could properly find that his testimony would assist the jury.

RSA 516:29; *Eames* v. *Corporation,* 85 N. H. 379, 385. We are also satisfied that there was no error in denial of the State's numerous motions to strike the witness' entire testimony for lack of qualification of the witness, and because his opinion was based upon elements of damage not recoverable under the law. The ruling that the latter objection went to the weight of the testimony and not its admissibility was correct. *Dowling* v. *Shattuck,* 91 N. H. 234. The fact that the witness' figures were not adopted by the verdict may be thought to indicate that the cross-examination was not without effect. The exceptions relating to the testimony of this witness are overruled.

Similar objection was made to testimony by the plaintiff's witness Spaulding. This witness was a civil and construction engineer by training, with a practical knowledge of the characteristics of industrial properties in New England, and of prices at which they had been sold. While cross-examination may be thought to have disclosed weaknesses in the method by which he arrived at his estimate of damages, his testimony was not erroneously received. Nor is inconsistency or error in the Trial Court's rulings demonstrated by the fact that another witness who was also an engineer, was not found qualified to express an opinion upon market value after he himself disclaimed the experience necessary to qualify as an appraiser "in the warehouse industry or any other industry."

Other exceptions taken by the State, including the exception to the denial of its motion to set aside the verdict, rest primarily upon issues heretofore considered, or are not of such consequence as to merit separate discussion. The testimony regarding the survey of the market made before the plaintiff purchased its property in Nashua was competent to show the "existing business or wants of the community" (*Emmons* v. *Company, supra,* 189) and bore directly upon the question of market value.

The State moved to set aside the verdict because excessive, and contrary to the evidence and the weight of the evidence. Under proper instructions the jury was called upon to determine whether the plaintiff's damage was in effect restricted to the value of the land actually taken, as the State contended, or was substantially greater because of the adverse effect upon the value of the entire property. Was the plaintiff entitled only to the value of what was taken away, or did the taking substantially impair the value of the whole by effectively preventing its most advantageous use? The verdict demonstrates that the State's views were not accepted;

but it is not for that reason vulnerable as a matter of law. *Interstate Bridge Authority* v. *Ham Estate, supra,* **92** N. H. **277, 282,** and cases cited.

*Judgment on the verdict.*

WHEELER, J., took no part in the decision; the others concurred.