JENNIE A. SLAVITT ET AL. *v.* HOWARD S. IVES, HIGHWAY COMMISSIONER

THE HOLSON COMPANY *v.* HOWARD S. IVES, HIGHWAY COMMISSIONER

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and FITZGERALD, JS.

Argued March 7—decided June 6, 1972

*Robert J. Randell,* of the New York bar, with whom was *Michael Schless,* for the appellant (plaintiff The Holson Company) in each case.

*Clement J. Kichuk,* assistant attorney general, with whom, on the brief, were *Robert K. Killian,* attorney general, and *Jack Rubin,* assistant attorney general, for the appellee (defendant) in each case.

*Robert A. Slavitt,* with whom, on the brief, was *Abraham D. Slavitt,* for the appellees (plaintiffs) in the first case.

SHAPIRO, J. On May 9, 1966, the state of Connecticut, through the defendant highway commissioner, acquired, by condemnation, property of Diamondhead Corporation (hereinafter referred to as Diamondhead). The commissioner assessed as total damages for the entire taking the sum of $211,000. On October 30, 1967, the state of Connecticut through the defendant commissioner, acquired by condemnation property of Jennie A. Slavitt and Ems Bergerman (hereinafter referred to as Slavitt). The commissioner assessed as damages to these owners resulting from the taking, the sum of $126,000.

Both the Diamondhead and Slavitt properties were interior parcels situated over 100 feet off Belden Avenue in Norwalk, behind other property fronting on that street. Diamondhead had access to Belden Avenue only by means of a single roadway, 40 feet wide by 115 feet long, delineated and desig-

nated as "right of way," owned in fee by Diamondhead and used in common by Diamondhead, Slavitt and a third adjoining owner, Belden Manufacturing Company. The roadway extended south to Belden Avenue along the easterly boundary of the Diamondhead property.

The Slavitt property was so situated to the west of Diamondhead that its only access to Belden Avenue was over a second "right of way" roughly 54 x 185 feet, which ran easterly across the Diamondhead property to connect to the aforementioned right-of-way, thus giving access to Belden Avenue.

The Holson Company (hereinafter referred to as Holson), a lessee at the time of the taking, conducted a manufacturing business in a one-story building located on the Diamondhead property and also in an adjoining two-story building located on the Slavitt property. The buildings were connected by a covered loading platform and storage area.

The Diamondhead building was occupied by Holson under a sublease which commenced February 1, 1963. It was thereafter extended until December 31, 1966. At the time of the Diamondhead taking, Holson's sublease had an unexpired term of seven months and twenty-two days. After the Diamondhead taking in May, 1966, the state permitted Holson to continue in its use and occupancy of the Diamondhead building at the same rate paid previously by Holson under its sublease. Subsequently, the state demanded that Holson vacate the Diamondhead building to make way for demolition and Holson began to move in January, 1967, and finished moving in March, 1967.

The Slavitt building was occupied by Holson under an initial lease for a term of ten years beginning on April 1, 1955, and expiring March 31, 1965.

It was extended for a further term ending March 31, 1970. At the time of the earlier Diamonhead taking, the Slavitt leasehold had an unexpired term of three years, ten months and twenty-four days and at the time of the later Slavitt taking, that leasehold's unexpired term was two years, five months and four days.

Holson moved from both the Diamondhead and Slavitt properties between January 3, 1967, and March 18, 1967. After Holson moved from the Slavitt property, it continued to pay rent to the Slavitt owners, pursuant to its lease, until October 30, 1967, the date of the Slavitt fee taking.

Slavitt and Diamondhead each appealed to the Superior Court from the assessments of damages filed by the defendant highway commissioner. Holson was permitted to file an intervening appeal as a coplaintiff in the Slavitt appeal; it filed a separate appeal from the assessment of the Diamondhead property. The Superior Court referred the actions to a state referee who, having heard all three appeals, rendered two separate amended reports. One amended report was rendered in the Slavitt appeal and an amended joint report was rendered in the Diamondhead and Holson appeals. Two separate judgments were rendered in these actions by the Superior Court which accepted the referee's amended reports. The judgment in the Slavitt appeal awarded Slavitt $196,000 for the value of its property while Holson was awarded $1615 for the value of its trade fixtures and $600 for the nominal value of its leasehold interest at the time of the taking. Both parties also received compensation for appraisers' fees. No other items of damage claimed by Holson were allowed.

In the judgment rendered in the Holson and

Diamondhead appeals, Diamondhead was awarded $318,650 and Holson was awarded $2350 for the value of its leasehold interest and $4031 for the value of its trade fixtures. Other items of damage claimed by Holson were disallowed.

Only the lessee Holson has appealed to this court from the judgments in the Slavitt and Holson cases. In this combined appeal, Holson claims in its brief that the court erred in accepting the referee's report, which failed to rule affirmatively on its claims that (1) the taking of a fee subject to a right of way to landlocked property is an actual taking of the right-of-way and consequently the taking of the fee of the landlocked parcel at the same time; (2) the valuation of a leasehold interest under eminent domain is the difference between the economic rent and the rent reserved in the lease and not the marketability of the lease; (3) the value of the fixtures which enhance the value of leased property is measured by reproduction cost less depreciation and not by the purpose for which fixtures are used; (4) moving expenses of a tenant are an element of compensation in arriving at the market value of the right to immediate possession of realty under eminent domain.

I

Holson claims that the defendant took and legally destroyed its sole right of access to the Slavitt property when it took the Diamondhead property on May 9, 1966, and that as a result of that taking and destruction of the access to the Slavitt property, an effective and de facto taking of the Slavitt property occurred on May 9, 1966, and not on October 30, 1967, when the state condemned de jure the Slavitt property. Holson does not contend that its right of access from the otherwise landlocked Slavitt prop-

erty was physically destroyed at the time of the Diamondhead taking. After the Diamondhead taking, the defendant permitted Holson to continue in the use and occupancy of the Diamondhead property on a month-to-month basis by the specific request of Holson, and Holson paid the defendant for such use and occupancy at the same rate as it had paid under its sublease. Holson continued to use the Slavitt property until it voluntarily vacated the premises in March, 1967, so that on October 30, 1967, the date of the taking, the Slavitt premises were vacant and unoccupied. Holson continued, however, to pay rent to Slavitt under the lease until the date of the taking.

General Statutes § 13a-73 (b), under which the defendant acquired the Diamondhead property, provides that the defendant file his assessment of damages for property to be taken with the clerk of the Superior Court and that at any time after such assessment has been made,[1] the physical construction or other improvement may be made.[2] The clerk must then give notice of the assessment to each owner of land affected thereby and to all persons appearing of record as holders of any encumbrance or interest therein which is to be taken. See also General Statutes § 48-21.

Section 13a-73 (b) further provides that on the filing of the assessment, the defendant shall "forthwith" sign and file with the town clerk a certificate "setting forth the fact of such taking, a description

[1] The assessment is "made" when the filing with the clerk takes place. *Salgreen Realty Co.* v. *Ives,* 149 Conn. 208, 212, 177 A.2d 673; *Kratochvil* v. *Cox,* 129 Conn. 246, 251, 27 A.2d 382; *Munson* v. *MacDonald,* 113 Conn. 651, 657, 155 A. 910.

[2] General Statutes § 13a-76, which allows any person aggrieved by the assessment to apply to the Superior Court for a reassessment, provides that the pendency of such an application shall not prevent or delay the improvement of the highway.

of the real property so taken and the names and residences of the owners from whom it was taken," and that upon the filing of this certificate, "title to such real property in fee simple shall vest in the state of Connecticut except that, if it is so specified in such certificate, a lesser estate, interest or right shall vest in the state."[3]

The certificate of taking for the Diamondhead property sets forth the fact of the taking, a description of the property and, among others, the names and residences of Holson as sublessee and of Slavitt as owner of the right of way. It concludes with the statement that "[s]aid premises . . . are taken subject to easements in favor of the Connecticut Light and Power Company, The Southern New England Telephone Company and the City of Norwalk, as of record may appear." No right-of-way in favor of Slavitt, however, was specified as being excluded. We must conclude, then, that under § 13a-73, the right-of-way was included within the taking.

The question as to when a taking is complete is one of substantive law and depends on the law of each state. *Crawford* v. *Bridgeport,* 92 Conn. 431, 437, 103 A. 25; 6 Nichols, Eminent Domain (3d Ed.) § 26.42. Although a plaintiff is constitutionally entitled to any damages he may have suffered where physical possession precedes the filing of the certificate and assessment (*Carl Roessler, Inc.* v. *Ives,* 156 Conn. 131, 144, 239 A.2d 538; *Trumbull* v. *Ehrsam,* 148 Conn. 47, 55, 166 A.2d 844), there is no authority cited by the defendant for his proposition that there was no taking of the right-of-way on May 9, 1966, because possession had not actually been taken, or for his contention that the plaintiff's continuing

---

[3] General Statutes § 13a-73 (a) defines "real property" as including "land and buildings and any estate, interest or right in land."

actual possession precluded its right to damages. But see *Clark* v. *Cox,* 134 Conn. 226, 231, 56 A.2d 512; *Stock* v. *Cox,* 125 Conn. 405, 409–10, 6 A.2d 346. There is no suggestion in the record that the plaintiff remained in possession as a wrongdoer. See *Redevelopment Agency* v. *Norwalk Aluminum Foundry Corporation,* 155 Conn. 397, 403, 233 A.2d 1.

Under our procedure the taking of a land interest is complete when the assessment is filed with the clerk of the Superior Court. *Carl Roessler, Inc.* v. *Ives,* supra, 139; *Salgreen Realty Co.* v. *Ives,* 149 Conn. 208, 212, 177 A.2d 673; *Clark* v. *Cox,* supra, 228. "This is so even though there be no physical taking, for, in the absence of specific provision otherwise in the statute, 'when the taking for public use is by administrative order if "the formal act of some responsible body is required to effect a taking, the filing of such order definitely fixes the time and extent of the taking;" . . . .' Therefore, 'taking' means the accomplishment of the legal step whereby the landowner's right of possession is terminated. Accordingly, the taking of the plaintiffs' land occurred on . . . the date when the defendants' assessment was filed." *Clark* v. *Cox,* supra, 228–29. Thus a taking of the right-of-way occurred even though the plaintiff had not been physically dispossessed,[4] for the uncertain nature and consequent questionable value of continued tenure under such circumstances are obvious. The fact that the Diamondhead property had been condemned and was liable at any time to be so possessed necessarily seriously interfered

---

[4] We have of course recognized that the right of the state to recover for continued possession after the property has been taken pursuant to statute can and should be determined in an independent proceeding brought in the name of the highway commissioner on its behalf. *Clark* v. *Cox,* 134 Conn. 226, 234, 56 A.2d 512.

with its beneficial use and could have entirely destroyed it. We have observed that from the time of the award his "possession is precarious, liable to be terminated at any time; . . . he cannot safely improve; if he sows, he cannot be sure that he will reap." *Clark* v. *Cox*, supra, 233. He is not placed in this position by any act of his own, and is not in possession as a wrongdoer.

The destruction of a plaintiff's sole right of access constitutes a taking "in the constitutional sense" of the landlocked property. *Stock* v. *Cox*, supra, 419, and authority cited. We conclude then that the defendant took the plaintiff's interest in the landlocked Slavitt property on May 9, 1966, when he took its right of access. "The damages sustained in a taking by eminent domain are to be measured as of the date of the taking." *Research Associates, Inc.* v. *New Haven Redevelopment Agency*, 152 Conn. 137, 139, 204 A.2d 833; *Colaluca* v. *Ives*, 150 Conn. 521, 531, 191 A.2d 340; *DelVecchio* v. *New Haven Redevelopment Agency*, 147 Conn. 362, 365, 161 A.2d 190. The plaintiff is entitled to just compensation, for "[e]very kind of right or interest in property which has a market value" must be compensated for in condemnation proceedings. *Canterbury Realty Co.* v. *Ives*, 153 Conn. 377, 384, 216 A.2d 426; *Stamford* v. *Vuono*, 108 Conn. 359, 368, 143 A. 245; *Campbell* v. *New Haven*, 101 Conn. 173, 178, 125 A. 650. Here, the plaintiff, as lessee, was entitled to receive, as nearly as possible, a fair equivalent in money for the loss of its lease as of May 9, 1966. *Canterbury Realty Co.* v. *Ives*, supra; *Moss* v. *New Haven Redevelopment Agency*, 146 Conn. 421, 425, 151 A.2d 693; *Winchester* v. *Cox*, 129 Conn. 106, 114, 26 A.2d 592; see *McGowan* v. *Milford*, 104 Conn. 452, 456, 133 A. 570.

## II

The plaintiff argues that the Holson leasehold interest in the Slavitt property, which we have concluded should have been valued as of May 9, 1966, must be valued by computing as of that date the difference between the contract rent in the lease and such higher rental value as the premises may have.

The referee found that the value of the Holson leasehold in the Slavitt premises was $600 for the twenty-nine months which remained of the lease computed as of October 30, 1967. The plaintiff concedes in its brief that this award was supported by the testimony of the Slavitt real estate expert. He testified that where the basic term of the lease was less than five years, the premises could be leased only for warehousing. He then fixed an economic rental value for the premises based on its use for warehousing, subtracted the contract rent, and capitalized the excess of rental value over contract rent by an interest factor to arrive at an indicated value of $617.42, which he rounded out to $600. This method is entirely appropriate. The plaintiff admits that this is the same method employed by his expert, J. Peter Woods, and that the "real difference" is merely the amount of estimated economic annual rental value used by each.

In *Canterbury Realty Co.* v. *Ives,* supra, 382, we stated: "The value of the lease is properly arrived at, in the case of a complete taking, by subtracting the rent provided for under the lease from the fair market value of the lease. *United States* v. *Petty Motor Co.,* 327 U.S. 372, 381, 66 S. Ct. 596, 90 L. Ed. 729; *New Jersey Highway Authority* v. *J & F Holding Co.,* 40 N.J. Super. 309, 316, 123 A.2d 25; Jahr, Eminent Domain, p. 197; 4 Nichols, Eminent Domain

§ 12.42 [3]." See also *Barnini* v. *Sun Oil Co.,* 161 Conn. 59, 64, 283 A.2d 217. In *Waesche* v. *Redevelopment Agency,* 155 Conn. 44, 48, 229 A.2d 352, we added: "[This] is but a specific application of the general rule that the constitutional requirement that a condemnee receive just compensation 'means a fair equivalent in money for the property taken . . . as nearly as its nature will permit. Ordinarily, although not necessarily, this is the market value of the property taken. But the question of what is just compensation is an equitable one rather than a strictly legal or technical one. The paramount law intends that the condemnee shall be put in as good condition pecuniarily by just compensation as he would have been in had the property not been taken.' *Colaluca* v. *Ives,* 150 Conn. 521, 530, 191 A.2d 340."

We have many times stated that the trier may arrive at his own conclusion as to the value of a land interest which is reached by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value and his own general knowledge of the elements going to establish it. *Gentile* v. *Ives,* 159 Conn. 443, 451, 270 A.2d 680; *Brothers, Inc.* v. *Ansonia Redevelopment Agency,* 158 Conn. 37, 43, 255 A.2d 836; *Bennett* v. *New Haven Redevelopment Agency,* 146 Conn. 421, 425, 151 A.2d 693. No single method of valuation was controlling and the referee was entitled to select the most appropriate one under the facts as he found them to be. *Brothers, Inc.* v. *Ansonia Redevelopment Agency,* supra, 45; *Stanley Works* v. *New Britain Redevelopment Agency,* 155 Conn. 86, 99, 230 A.2d 9; *Research Associates, Inc.* v. *New Haven Redevelopment Agency,* 152 Conn. 137, 142, 204 A.2d 833. We conclude then that while the referee did not err in adopting the evidence and

method presented by the defendant's expert witness, the leasehold should have been valued over a period of forty-six months and twenty-four days rather than the twenty-nine months as computed by the referee. It is only for this reason that we must remand the case for a new trial limited solely to the valuation of the Holson leasehold interest in the Slavitt property award.

## III

Holson claims that the court erred in accepting the report of the referee, because the referee failed to include in his assessment of damages the amount Holson claimed as the value of its trade fixtures which it installed on the Slavitt and Diamondhead properties.

As applied to the Slavitt property, the referee concluded that, at the time of its taking, its value was enhanced by the value of trade fixtures installed by Holson to the extent of $1615. As applied to the Diamondhead property, the referee concluded that, at the time of its taking, its value was enhanced by the value of trade fixtures installed by Holson to the extent of $4031. Holson assigns error in both conclusions, claiming that in the Slavitt taking the referee erred in failing to conclude that the value of the property was enhanced to the extent of $24,106; and that in the Diamondhead taking the referee erred in failing to conclude that the value of the property was enhanced to the extent of $5606. Holson in its brief, however, pursues its assignment of error only as it relates to the Slavitt property and accordingly we will limit our discussion to that assignment only. *Fruchtman* v. *Manning,* 156 Conn. 500, 502, 242 A.2d 723; *Parish of St. Andrew's Church* v. *Zoning Board of Appeals,* 155 Conn. 350,

360, 232 A.2d 916; *Andrew C. Peterson, Inc.* v. *Town Plan & Zoning Commission,* 154 Conn. 638, 640, 228 A.2d 126; *Rossignol* v. *Danbury School of Aeronautics, Inc.,* 154 Conn. 549, 556–57, 227 A.2d 418; *Labbadia* v. *Bailey,* 152 Conn. 187, 190, 205 A.2d 377; Maltbie, Conn. App. Proc. §§ 168, 327.

Holson, in its appeal, does not question the award of $1615 for the trade fixtures which it could have removed when it vacated the premises but which the defendant directed were not to be removed. It is other installations made by Holson, claimed by it to be the bulk of its trade fixtures, for which it asserts no award was made because the referee failed to evaluate them properly. As to these fixtures the referee found that they "were so installed as to become an integral part of the realty and which could not be removed without destruction of the value of the installations." Holson's claim is that the enhancement of property value because of trade fixtures should be measured by the reproduction cost less reasonable depreciation in the same manner as if installed permanently by the owner of the fee and that as a lessee it is entitled to payment for the enhancement of property value because of its trade fixtures in the same manner as if they had been installed by the owner of the fee. The record fails to support Holson's position.

The defendant's appraisers, Robert F. Wynn and Robert N. Noce, testified that the presence of fixtures and salvable items were considered by them to be part of the realty and were included by them in their determination of the economic rental value of the property. Holson's appraisers did not concur in this conclusion. The referee found that "[s]uch installations were taken into account by all of the appraisers in determining the economic rental value of the

leased premises on the date of the taking." " '[N]o one method of valuation is controlling and . . . the referee may select the one most appropriate in the case before him.' *Connecticut Printers, Inc.* v. *Redevelopment Agency,* . . . [159 Conn. 407, 414, 270 A.2d 549]; *Brothers, Inc.* v. *Ansonia Redevelopment Agency,* 158 Conn. 37, 43, 255 A.2d 836; *Research Associates, Inc.* v. *New Haven Redevelopment Agency,* 152 Conn. 137, 142–43, 204 A.2d 833." *Birnbaum* v. *Ives,* 163 Conn. 12, 18, 301 A.2d 262. "The purpose of offering in evidence the opinion of expert witnesses as to such matters as land values is to aid the trier to arrive at his own conclusion, which is to be reached by weighing those opinions in the light of all the circumstances in evidence bearing upon value and his own general knowledge of the elements going to establish it." *Appeal of Cohen,* 117 Conn. 75, 85, 166 A. 747. The trier is the final judge of the credibility of witnesses and of the weight to be accorded to their testimony. *Morgan* v. *Hill,* 139 Conn. 159, 161, 90 A.2d 641; *Appeal of Cohen,* supra, 81.

It was proper, therefore, for the referee to consider what effect these fixtures which had become an integral part of the realty and could not be removed without destruction of their value might have on the value of the building. He was not required to accept Holson's theory of their valuation.

## IV

In both appeals, Holson makes the claim that the court erred in accepting the referee's report, because the referee erred in failing to include in his awards of damages the fair and reasonable value of Holson's moving expenses. Holson also contends that the rule regarding fair market value in an award to

an owner-occupant as related to the item of moving expenses should be extended so as to include the fair and reasonable value of the moving expenses of a lessee-occupant. The further claim is made that Holson's property rights of possession have been appropriated, and without an award for the fair and reasonable value of its moving expenses there has been an unconstitutional taking without due process.

The commissioner proceeded to condemn the Slavitt and the Diamondhead properties under General Statutes § 13a-73 of which subsection (a) defines "real property" as including "land and buildings and any estate, interest or right in land" and subsection (b) permits the taking of any land by the commissioner which he finds necessary "and the *owner* [emphasis added] of such land shall be paid by the state for all damages." This court has held that "in determining market values in awarding damages for land taken, it is proper to consider all those elements which an owner or a prospective purchaser could reasonably urge as affecting the fair price of the land." *Andrews* v. *Cox,* 127 Conn. 455, 458, 17 A.2d 507. As we point out, the tenant's moving expenses are not a proper element to be considered in arriving at the fair price of the land.

If Holson had been the owner of the premises on which its business was conducted, one factor which a trier may consider is the expense an owner is compelled to incur in moving machinery from the condemned property to another location. *Stanley Works* v. *New Britain Redevelopment Agency,* 155 Conn. 86, 102, 230 A.2d 9; *Hunter Press, Inc.* v. *Ives,* 150 Conn. 32, 34, 183 A.2d 842; *DelVecchio* v. *New Haven Redevelopment Agency,* 147 Conn. 362, 364–65, 161 A.2d 190; *Harvey Textile Co.* v. *Hill,* 135 Conn. 686, 689, 67 A.2d 851. In an appeal from

an appraisal of damages for land taken for a highway and where the lessee was allowed to file an intervening complaint wherein it claimed that it had an interest in the appraisal of damages by virtue of its leasehold, this court held that the referee was correct in refusing to consider any expense confronting the lessee in the removal of its equipment. *Eljay Realty Co.* v. *Argraves,* 149 Conn. 203, 205–6, 177 A.2d 677.

The expenses incurred by a lessee in removing his property from the demised premises because of condemnation are generally considered not recoverable as an element of damages. Note, 3 A.L.R.2d 286, 312, and cases cited; 27 Am. Jur. 2d 200, Eminent Domain, § 354, and cases cited. In general, the lessee's cost of removing his personal property from the land condemned is not an element meriting consideration whether such item is considered as a separate, substantive element of damages or whether it is considered insofar as its effect on market value of the leasehold is concerned. 4A Nichols, Eminent Domain (3d Ed.) § 14.2471 [2], B. Lessee, p. 14-301; see note, 156 A.L.R. 397.

"The reasons for not allowing this damage [tenant's moving expense] are: (1) That the tenant would have to move anyhow, and this is one of the incumbrances attaching to the act of placing personal property on leased premises; (2) it is not within the language of the Constitution—the expense of moving it is neither a taking nor a damaging of the property." *Springfield, Southwestern Ry. Co.* v. *Schweitzer,* 173 Mo. App. 650, 655, 158 S.W. 1058. In the absence of a statute the moving expenses of a lessee, where there is an entire taking of the whole of the condemnee's estate under the sovereign power of eminent domain, cannot be con-

sidered as an element of damage, since such a loss is not a taking of property. See *Housing Authority* v. *Kosydor,* 17 Ill. 2d 602, 162 N.E.2d 357; *Emery* v. *Boston Terminal Co.,* 178 Mass. 172, 59 N.E. 763; *Edgecomb Steel of New England, Inc.* v. *State,* 100 N.H. 480, 131 A.2d 70.

The fifth amendment to the constitution of the United States and article first, § 11 of the constitution of Connecticut provide that private property shall not be taken for public use without just compensation. The expenses of moving by the plaintiff were those which it would have sustained at the termination of its leases and are consequential in their nature. See *William Wrigley, Jr., Co.* v. *United States,* 75 Ct. Cl. 569; *R. S. Howard Co.* v. *United States,* 81 Ct. Cl. 646. Such consequential losses resulting from a taking are not compensable under the fifth amendment. *Mitchell* v. *United States,* 267 U.S. 341, 45 S. Ct. 293, 69 L. Ed. 644; *United States* v. *Miller,* 317 U.S. 369, 376, 63 S. Ct. 276, 87 L. Ed. 336; *United States ex rel. Tennessee Valley Authority* v. *Powelson,* 319 U.S. 266, 281–83, 63 S. Ct. 1047, 87 L. Ed. 1390. It takes an act of the legislature to make moving expenses compensable. In that regard, we point to Public Act 108 (which became General Statutes § 13a-81), adopted in the 1967 session of the General Assembly to take effect May 22, 1967.[5] This act allowed moving expenses to a tenant such as Holson. It was not retroactive, however, and nothing in the 1967 statute can be said to apply in order to benefit the plaintiff.

There is no error in The Holson Company case. There is error in part in the Slavitt case and that

---

[5] This act was later repealed by Public Act 503 (which became General Statutes §§ 13a-81a—13a-81l) and by this 1969 legislation a tenant continues to be able to recover for moving expenses.

case is remanded for a new trial limited to the issue of the valuation of the Holson leasehold interest in the Slavitt property, which shall be computed as of May 9, 1966.

In this opinion the other judges concurred.