STRADMORE DEVELOPMENT CORPORATION *v.*
COMMISSIONER OF TRANSPORTATION

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued March 2—decision released May 17, 1977

*Robert P. Burns,* with whom was *David E. Shiffrin,* for the appellant (plaintiff).

*William A. McQueeney,* assistant attorney general, with whom were *Kenneth N. Tedford,* assistant attorney general, and, on the brief, *Carl R. Ajello,* attorney general, for the appellee (defendant).

LONGO, J. This proceeding arose from the taking by eminent domain proceedings of a parcel of the plaintiff's land located in New Britain. The commissioner of transportation assessed damages at $250,500 and the plaintiff appealed to the Superior Court. The appeal was referred to three state referees, who, exercising the powers of the Superior

Court, reassessed the fair market value of the land as $491,200 and awarded appraisers' fees in the amount of $10,000 and engineering fees in the amount of $5000. The plaintiff has appealed from the judgment, claiming error in the computation of the number of dwelling units which could have been built on the property, the value of the unfinished building, the cost of constructing adequate sewage facilities and the amount awarded for engineering fees.

The facts found and conclusions reached by the court include the following: The plaintiff purchased the property in 1968 for the sum of $200,000, which included a $5000 down payment and a mortgage covering the balance. The irregularly shaped parcel included 12.56 acres and was subject to a sewer easement, a right of way and leaching field rights in favor of the grantors. The grantors also gave the plaintiff a parking easement over part of the grantors' adjoining land which contained approximately 55,000 square feet. The property taken included a partially completed building and the parties stipulated that the value of the labor and materials was $135,000 subject to the right of the commissioner to offer proof that the structure was worthless because it was being constructed in violation of the state and municipal building codes. There were extensive and serious violations of the state building code, the correction of which would require massive structural revision and, therefore, the building had a value of only $16,375, representing the worth of the foundation. The property also lacked any sewage facilities. There were four possible routes over which sewage lines might have been run connecting the property with main sewage lines. The first ran along Hartford Road through rock and

a peat bog. The second ran through a public park, which route had been the subject of prior litigation. See *Stradmore Development Corporation* v. *Commissioners,* 164 Conn. 548, 324 A.2d 919. The final two routes ran through private land across which easements had not been obtained. A willing buyer, therefore, informed of the legal matters and expense concerning construction of a sewer through a public park or over private property would base his cost upon constructing the sewer along Hartford Road at a cost of $160,000.

The plaintiff first assigns error in the court's exclusion of the parking easement area from its computation of the number of dwelling units which the property could support. The property taken was located in an A-3 zone, which permitted the development of 34.8 units per acre. The court, after hearing conflicting testimony, concluded that the highest and best use of the property would be for the development of luxury apartments at a density of twenty-two units with a value of $2300 per unit. The plaintiff does not contest the density or value per unit figures, but assigns error to the court's conclusion that only the 12.56 acres held in fee were subject to this type of development and not the additional 1.26 acres on which the plaintiff held a parking easement. Under our law, fair market value is to be determined according to the use to which the property could most advantageously be put and it was for the court to determine that use. *Connecticut Printers, Inc.* v. *Redevelopment Agency,* 159 Conn. 407, 411, 270 A.2d 549. The court clearly acted properly in concluding that land over which the plaintiff held a parking easement was not available for the same use as land which the plaintiff held in fee. Furthermore, based on tes-

timony offered at trial, the court was justified in refusing to allow any compensation for loss of the easement, since its value was offset by encumbrances on the land.

The plaintiff next claims that the court should have awarded it $135,000 as the stipulated value of the uncompleted structure on the property at the time of the taking. As stated previously, the parties entered into a stipulation which was incorporated into a finding of the court concerning the value of the structure, which the plaintiff has not attacked. This finding reads: "Plaintiff and defendant stipulated that if the court found the structure being built on the property by plaintiff at the time of taking could be continued being built, as it was at the time of the taking, that the court could by agreement of the parties find the value of the labor and materials to be $135,000 with the state reserving the right to offer proof [that] the incomplete structure had no value because it was being constructed in violation of the laws of the State of Connecticut and the City of New Britain." A later finding which the plaintiff attacks as being contrary to the stipulation of the parties states: "The partially built building suffered from incurable functional obsolescence to the extent that the foundation only had value which is reasonably found to be $16,375." The state relied principally upon the testimony of Thomas W. Persch, a registered professional architect, who testified to numerous failures to comply with the state and local building codes. The plaintiff argues, however, that the testimony of Persch was irrelevant since the local building code was not in evidence and the state code did not apply to the structure.

We find that the court acted properly in concluding that the requirements of the state code were applicable to the structure on the plaintiff's property. Though it is true that the initial building permit was issued on July 7, 1969, and that the state building code did not become applicable to the subject property until October 1, 1970, it is significant that the plaintiff was found to have sought a second permit, which was granted on October 8, 1971, when it increased the size of its planned structure from twenty to thirty-six units. The second permit was issued after the effective date of the state building code and, therefore, could not be affected by General Statutes § 19-395i, the saving clause which permitted noncompliance with the code for buildings being constructed under permits issued prior to October 1, 1970. The court, therefore, was justified in concluding, on the basis of testimony by Persch, that the structure contained extensive code violations and that the plaintiff was entitled to only $16,375 as compensation for the foundation. The plaintiff argues that because the court expressly found that the structure had some value and that it was possible to correct the defects, it was entitled to the stipulated amount of $135,000. We disagree with the plaintiff's interpretation of the stipulation. The plaintiff was entitled to the $135,000 only if "the structure being built on the property by plaintiff at the time of taking could be continued being built, as it was at the time of the taking . . . ." In light of the testimony that the structure would require massive changes if it were to be completed in compliance with the state building code it can hardly be said that it "could be continued being built, as it was at the time of the taking."

The plaintiff next assigns error to the court's conclusion that the cost of constructing sewage facilities connecting the plaintiff's property to the sewer system of New Britain would be $160,000. At trial, testimony was offered by the plaintiff fixing the cost of constructing the sewer system at anywhere from $100,000 to $150,000. Estimates by the defendant's witnesses placed the cost as high as $300,000. Based upon these estimates, the court's conclusion that a willing buyer would have deducted $160,000 for sewer construction from the value of the property was justified. *Birnbaum* v. *Ives,* 163 Conn. 12, 20, 301 A.2d 262. The plaintiff, however, attacks the court's refusal to find that the plaintiff had the necessary approval to run its sewer through A. W. Stanley Park, thereby reducing the reasonable cost to $100,000. It is true that the plaintiff had been granted permission by the board of public works to proceed with construction of the sewer through the park, but testimony by Stanley Pac, then mayor of New Britain, cast serious doubt on the right of the plaintiff to proceed. Further, the court found, in an unattacked finding, that the state health department had rejected the plaintiff's sewage plan because the present system was too overloaded to handle the additional flow. The city engineer had also not approved the plaintiff's plan because the city lines were not adequate to accept the flow, and, as of the date of the taking, the sewage situation in the area was so perilous that the state department of environmental protection had issued an order against the city to abate pollution. This court has repeatedly held that " 'in determining market values in awarding damages for land taken, it is proper to consider all those elements which an owner or a prospective purchaser could reason-

ably urge as affecting the fair price of the land.' *Andrews* v. *Cox,* 127 Conn. 455, 458, 17 A.2d 507." *Slavitt* v. *Ives,* 163 Conn. 198, 213, 303 A.2d 13. Because of the cloudy legal status of the plaintiff's sewage proposal and the general problems with sewage facilities in New Britain at the time of the taking we cannot say that the court erred by concluding that a willing buyer would deduct $160,000 as the cost of constructing a sewer line along Hartford Road, a route the court found and the evidence revealed to be a longer, geologically more difficult route than that through the park.

Finally, the plaintiff assigns error to the court's allowance of $5000 as "[a] fair and reasonable sum to be awarded for maps, plans and mechanical drawings," contending that $47,000 would have constituted the appropriate award. The $5000 was not included as an element contributing to market value of the property. See *Schnier* v. *Commissioner of Transportation,* 172 Conn. 427, 433, 374 A.2d 1087. Rather, it was awarded as an independent cost of the suit. The basis for the court's award is unclear, but it is clear that it cannot be supported under our law. These costs could only be allowed by statute. *Waterbury* v. *Macken,* 100 Conn. 407, 413, 124 A. 5. General Statutes § 52-257 allows the court to award "a reasonable sum" for "maps, plans, mechanical drawings and photographs necessary or convenient in the trial of any case . . . ." The plaintiff's claim of compensation in the amount of $47,000 was for engineering fees incurred in the original development of the property and not as compensation for expenses incurred in preparing for the litigation. Since no statutory basis existed for the award of an additional $5000 the final award must be reduced by $5000.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff to recover $240,700 constituting the amount of the deficiency between the compensation finally awarded and the amount deposited, together with $10,000 as appraisal fees.

In this opinion the other judges concurred.