LAUREL, INC. *v.* STATE OF CONNECTICUT ET AL.

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued April 8—decision released July 22, 1975

*Robert Y. Pelgrift,* assistant attorney general, with whom were *Paige J. Everin* and *Victor Feingold,* assistant attorneys general, and, on the brief, *Carl R. Ajello,* attorney general, and *Clement J. Kichuk,* assistant attorney general, for the appellants and cross appellees (defendants).

*Daniel Shepro,* with whom was *Allan J. Rosen,* for the appellee and cross appellant (plaintiff).

LOISELLE, J. On January 23, 1974, the state condemned 0.38 of an acre of land owned by the plaintiff. The plaintiff brought this action against the state and its commissioner of transportation alleging a constitutional taking of the remainder of its property, about 9.3 acres, for which the plaintiff sought damages. The court, after awarding damages under General Statutes § 48-17b for inverse condemnation, ordered the defendants to take all of the plaintiff's property by condemnation. The defendants have appealed from the judgment; the plaintiff has cross appealed.

The finding of the court, which is not subject to correction, is substantially as follows: On February 10, 1972, the plaintiff contracted to purchase and, on December 5, 1972, did purchase 9.7 acres of land in the town of Fairfield, abutting the

Merritt Parkway to the south, near its intersection with route 59, known as Easton Turnpike. The property has access to only three abutting public roads, Toll House Road, Stevenson Road and Easton Turnpike. Prior to the date of purchase, the zone of the property was changed from residence R-3 district to design residence district #1, and a special permit was issued for the construction of 103 condominium apartment units. As a condition of approval of the special permit, the town plan and zoning commission of Fairfield required that there be no access from Toll House Road and Stevenson Road, except for an emergency exit through Toll House Road for fire vehicles only.

On December 13, 1972, the Connecticut department of transportation, layout and design division, held a public hearing to provide information concerning a proposed layout and design of a portion of the Merritt Parkway, part of which seemed to affect the plaintiff's property. On January 31, 1973, the plaintiff's president discussed several alternatives with the state's engineers, but all alternatives were declined. At that time the defendants did not definitely know what they were going to do, or when or if anything was to be done, with regard to the improvements preliminarily planned on a portion of the plaintiff's property. At that time the plaintiff was committed to developing the 103 condominium units; it had invested approximately $1,000,000; and it had begun preliminary site work. The defendants were aware of the plaintiff's project as early as December, 1971, and the defendants' personnel were on the premises in the summer of 1973. By November, 1973, construction was in progress on buildings. At that time a repre-

sentative of the defendants gave the plaintiff notice of intent to purchase a portion of the plaintiff's property which would cut off access to and from Easton Turnpike. The next day, the plaintiff's attorney wrote to that representative pointing out, in addition to other problems, that the only access to the remaining property would be taken. Nothing further transpired between the parties until January 23, 1974, when the notice of taking and map were filed. None of the changes requested by the plaintiff's counsel's communication had been made. Although the state's design engineer's office had recommended that the taking documents provide specific access for the plaintiff, the notice of taking and the taking map did not contain such a provision.

The planning director for the town of Fairfield would not recommend Stevenson Road and Toll House Road as means of access to and from the plaintiff's property because the condominium project would generate too much traffic. The slope rights in the notice of taking included access to the garages for one building and access to the rear of the property where the sewer pumping station is located. The taking also included about eight to ten feet of a substantially completed clubhouse. After the defendants' taking, the remaining property did not conform to zoning regulations with respect to the requirements of access, setback, site plan change approval, and revision and extension of an approved special permit application. After the taking, the plaintiff's remaining land did not conform to the zoning requirements of the design residence district #1 as prescribed by the special permit. These nonconformities were such that, if prior approval for them were not obtained, the zoning commission would issue a stop order, and no certificate of occu-

pancy would be issued. The defendants did not file an application for a variance or any application pursuant to General Statutes § 48·24 with the town of Fairfield pertaining to the plaintiff's real estate. After the taking, the plaintiff brought its construction to a halt. There was no legal access to the proposed project; the Fairfield town officials advised that if work did not cease, a cease and desist order would issue as the special permit was no longer valid; the plaintiff's construction mortgagee bank would not continue making construction advances under these circumstances; and a construction stoppage was the only reasonable and prudent course of action. The plaintiff brought the present action within six days of the actual notice of condemnation.

In a memorandum of decision filed May 17, 1974, the court held that there was a denial of access to the plaintiff's remaining land, and that, under the circumstances, General Statutes § 48-17a provided an appropriate remedy. The court enjoined the defendants from taking the plaintiff's 0.38 of an acre by condemnation, decreed the condemnation proceedings then pending and known as *State Highway Commissioner* v. *Laurel, Inc., et al.,* file No. 6108, Superior Court, Fairfield County, void ab initio, and ordered that a further hearing be held to determine damages.

Upon motion to open judgment, filed by the defendants, the court held a further hearing and heard evidence relating to the plaintiff's damages, which the court characterized as "staggering consequential damages." As a result of the hearing, the court set aside the original judgment and then ordered the defendants to amend the taking and assessment of damages in *State Highway Commis-*

sioner v. *Laurel, Inc., et al.,* file No. 6108, to include all of the plaintiff's property. In addition, the defendants were ordered to pay the plaintiff's reasonable costs, disbursements and expenses of $77,543.22, pursuant to General Statutes §§ 48-17b and 48-17c.

The first special defense of the defendants to the plaintiff's action was that of sovereign immunity. It is clear that if there is a constitutional taking of property by the condemning authority and if there is no statutory provision for the awarding of damages, the court does have jurisdiction to determine the plaintiff's remedy. *Hooker* v. *New Haven & Northampton Co.,* 14 Conn. 146, 159, 160; see *Textron, Inc.* v. *Wood,* 167 Conn. 334, 342, 355 A.2d 307; *Karp* v. *Urban Redevelopment Commission,* 162 Conn. 525, 529–30, 294 A.2d 633; *Cone* v. *Waterford,* 158 Conn. 276, 280, 259 A.2d 615. If there is no legislation that makes provision for compensation for property taken, "[t]he Constitution does; and that is enough." *McKeon* v. *New York, N.H. & H.R. Co.,* 75 Conn. 343, 348, 53 A. 656. As the complaint did allege a constitutional taking by the defendants, the court did have jurisdiction to entertain the action. See *Anselmo* v. *Cox,* 135 Conn. 78, 60 A.2d 767, cert. denied, 335 U.S. 859, 69 S. Ct. 132, 93 L. Ed. 405.

The court found a constitutional taking of the plaintiff's remaining land by virtue of the taking of its means of access to Easton Turnpike, that being the sole means of access to the plaintiff's remaining land under the special permit granted to it by the Fairfield town plan and zoning commission. "The word 'taken' as used in the fifth amendment to the constitution of the United States and

article first, § 11 of the Connecticut constitution, 'means generally the exclusion of the owner from his private use and possession, and the assumption of the use and possession for the public purpose by the authority exercising the right of eminent domain.' *Bishop* v. *New Haven,* 82 Conn. 51, 58, 72 A. 646." *Carl Roessler, Inc.* v. *Ives,* 156 Conn. 131, 140, 239 A.2d 538; *Trumbull* v. *Ehrsam,* 148 Conn. 47, 55, 166 A.2d 844. A "taking" may be complete without an actual, physical appropriation of property. *Slavitt* v. *Ives,* 163 Conn. 198, 207, 303 A.2d 13; *Stock* v. *Cox,* 125 Conn. 405, 419, 6 A.2d 346; see 2 Nichols, Eminent Domain (3d Ed.) § 6.1 (1). In *Stock* v. *Cox,* supra, it was held that the destruction of the right of access to a parcel of land constituted a taking of it in a constitutional sense, and that the complete deprivation of access to the severed parcel was equivalent to a direct taking of the land and therefore a confiscation. See also *Knapp & Cowles Mfg. Co.* v. *New York, N.H. & H.R. Co.,* 76 Conn. 311, 315, 56 A. 512.

There is, however, no confiscation of property or a taking in the constitutional sense unless the property cannot be utilized for any reasonable and proper purpose; *Zygmont* v. *Planning & Zoning Commission,* 152 Conn. 550, 556, 210 A.2d 172; *Vartelas* v. *Water Resources Commission,* 146 Conn. 650, 153 A.2d 822; as where the economic utilization of the property is, for all practical purposes, destroyed. See *Dooley* v. *Town Plan & Zoning Commission,* 151 Conn. 304, 197 A.2d 770; *Platt Bros. & Co.* v. *Waterbury,* 72 Conn. 531, 45 A. 154. See also *Del Buono* v. *Board of Zoning Appeals,* 143 Conn. 673, 678, 124 A.2d 915. "Unless the injury to the remaining land is so severe as to render it useless for any purpose, the condemnor taking part of the

lands is not bound to pay the full value of the entire tract, even if, by reason of injury to such land, the owner has abandoned all use of the property." Annot., 27 Am. Jur. 2d, Eminent Domain, § 310, p. 311; *Hutchinson* v. *Maiwurm,* 162 N.W.2d 408 (Iowa). Where a portion of a parcel is taken and the remainder of the land is not taken, either by right of statutory authority or in a constitutional sense, the owner has no direct cause of action against the condemnor but is left to recover any severance damage under the provisions of General Statutes § 13a-76. See *United States* v. *Miller,* 317 U.S. 369, 376, 63 S. Ct. 276, 87 L. Ed. 336; *Paterson* v. *Argraves,* 152 Conn. 339, 342, 206 A.2d 829.

In light of these principles, the question to be determined is whether the taking of the way of access to Easton Turnpike is a constitutional taking of the remaining land of the plaintiff.

The court specifically found that after the taking of the means of access to Easton Turnpike the plaintiff's land did not conform to the zoning requirements of the design residence district #1 and to the special permit requirements under which the plaintiff was constructing the 103 condominium units. Because of the effect of those nonconformities and the prohibition on the use of the other two means of access by the special permit, the plaintiff claims, and the court concluded, that a constitutional taking occurred.

The court found that by the defendants' action, the plaintiff has lost its special permit. The property in question was classified as residence R-3 district prior to the plaintiff's purchasing of it. The zone of this parcel of land was changed to design residence district #1, and, thereafter, a special

permit to construct the 103 condominium units was issued. The relevant portions of the ordinance as printed in the defendants' appendix, of which judicial notice may be taken and upon which the court based its decision, state that the commission "may grant a special permit for the establishment of a special permit use in Designed Residence District #1" and that "if the Zoning District existing prior to the amendment of the Zoning Map establishing the Designed Residence District #1 was a Residence . . . R-3 . . . District, land, buildings and other structures may also be used for any use permitted in such prior zoning district subject to all of the requirements of such prior district." The ordinance further provides that the "[a]pproval of an application for a special permit under this section shall constitute approval conditioned upon completion of the proposed development, in accordance with plans approved within a period of two years, after approval is given" and that the "[a]pproval of the application shall become null and void in the event of failure to complete the proposed development within the two-year period."

The court correctly found that the filing of the notice of taking and map rendered the special permit inoperative. However, as the special permit was a conditional one, the effect of its becoming inoperative was to leave the remaining 9.3 acres of land owned by the plaintiff in a design residence district #1, eligible for application for another special permit, or, if none is granted, at the very least, available for such uses as are allowed in a residence R-3 district, with access to Toll House Road and Stevenson Road. It is true that the remaining land will not be potentially as productive as it was at the time of the taking and that the eval-

uation of severance damages to the plaintiff's property, no doubt, will be substantial, but the remaining property is not worthless or unavailable for such uses as the zoning regulations will allow. This being so, there has been no taking which rendered the plaintiff's remaining land practically useless and which, in effect, was a confiscation.

The plaintiff argues that the development of the condominium project has reached such a stage of completion that alternative uses of the property are out of the question and that, in order to develop the property for residential use, present improvements would have to be torn down, their substantial costs would be lost, and it would be speculative whether a separate environmental permit for any development would be granted.

The exhibit to which the court refers in one of its findings of fact indicates that the project was in the process of development but was in no way near substantial completion, and that a substantial portion of the remaining land was not yet improved with structures. The question of the likelihood of obtaining an environmental permit for development is a matter which may be considered in the determination of fair value in assessing the plaintiff's damages. See *Talarico* v. *Conkling*, 168 Conn. 194, 197, 362 A.2d 862; *Budney* v. *Ives*, 156 Conn. 83, 239 A.2d 482.

The plaintiff further argues that it could not develop the property under the residence R-3 district regulations because subdivision regulations provide that streets, closed at one end by building lots and which will not be extended in the future, shall provide sole access to not more than ten build-

ings and that there are now more than ten buildings along each of the streets abutting the plaintiff's premises. As to this argument, the provision referred to by the plaintiff refers to cul-de-sacs but does not prohibit the extension of such streets as would be necessary for any development of the area.

As the action of the defendants in condemning 0.38 of an acre of the plaintiff's property did not amount to a confiscation or taking of the remaining nine acres of land, the plaintiff's action against the state was vulnerable to the special defense of sovereign immunity. Since the provisions of General Statutes § 13a-76 do allow for the recovery of severance damages, that statutory remedy must be resorted to for such damages. *Karp* v. *Urban Redevelopment Commission,* 162 Conn. 525, 529, 294 A.2d 633; *Trumbull* v. *Ehrsam,* 148 Conn. 47, 56, 166 A.2d 844; 6A Nichols, Eminent Domain (3d Ed.) § 28.11; 27 Am. Jur. 2d, Eminent Domain, § 478, p. 409. Our law provides for recovery for severance damages where there is a condemnation of a portion of a parcel of land and the remaining land is not taken either by condemnation or in a constitutional sense. The proper measure of damages is the difference between the market value of the whole parcel as it was before the taking and the market value of what remains thereafter. *Gontarz* v. *Berlin,* 154 Conn. 695, 697, 229 A.2d 29; *Eljay Realty Co.* v. *Argraves,* 149 Conn. 203, 205, 177 A.2d 677; *Northeastern Gas Transmission Co.* v. *Ehrhorn,* 145 Conn. 83, 86, 139 A.2d 53.

Since there was no taking in the constitutional sense, the plaintiff had no right of direct action against the defendants and, consequently, it was not

entitled to any damages for inverse condemnation proceedings as contemplated by General Statutes § 48-17b.

The plaintiff, in its cross appeal, claims error in the court's failing to find that under General Statutes § 48-24,[1] the defendants, not having sought a variance for the plaintiff's remaining land, were required to take the entire parcel of real estate. The plaintiff argues that as the term "area requirements" is not defined in the statute those words may mean lot area requirements or requirements of area such as setback, side yard, acreage, special permit and all requirements to which property and structures must conform. The court in its finding was specific that the condemnation by the defendants rendered the plaintiff's land nonconforming to the zoning regulations with respect to the requirements of access, setbacks, site plan change approval, and revision and extension of an approved special permit application. No useful purpose would be served in repeating the legislative history of § 48-24. In view of its history and the wording of the statute, "if the remaining portion of such property does not conform to the area requirements," it is evident that what is intended and required is a lot area

---

[1] "[General Statutes] Sec. 48-24. CONDEMNING AUTHORITY TO OBTAIN ZONING VARIANCE FOR PORTION OF PROPERTY NOT TAKEN OR TAKE ENTIRE UNIT. A condemning authority, if acquiring less than the total amount of a single unit of contiguous property, shall, if the remaining portion of such property does not conform to the area requirements of existing zoning regulations, obtain a zoning variance for such remaining portion of property from the local zoning board of appeals before condemning any portion of such property. If such variance is not obtained prior to the taking by the condemning authority, the owner or owners of such single unit of contiguous property shall be reimbursed for the total amount of such unit and the condemning authority shall take title in fee simple to the entire unit of contiguous property."

variance for a substandard parcel, that is, for what will remain of the whole tract after a partial taking. Under the facts of this case, there was no duty upon the defendants to seek any variance under General Statutes § 48-24.

The plaintiff is not without remedy. It is entitled to a determination of its damages in an appeal from the assessment under General Statutes § 13a-76. The Superior Court in Fairfield County is ordered to reinstate the condemnation proceedings as initiated by the defendants and known as *State Highway Commissioner* v. *Laurel, Inc., et al.,* file No. 6108, and the parties upon remand may proceed under General Statutes § 13a-76, with all rights attendant thereto, as of the date of judgment by the Superior Court.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants and to reinstate the condemnation proceedings as initiated by the defendants and known as *State Highway Commissioner* v. *Laurel, Inc., et al.,* file No. 6108.

In this opinion the other judges concurred.