[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MOTION TO STRIKE
This matter involves a parcel of land located in Easton and owned by the plaintiffs. The complaint alleges that the property, consisting of 2.9186 acres, is located in District "B", which requires a minimum lot size of three acres in order to construct a house thereon. The complaint further alleges that the defendant denied the plaintiff's application for a variance on September 2, 1986, and that on July 28, 1988 the Superior Court dismissed the plaintiff's appeal from that decision. The complaint further pleads that the decision of the Zoning Board of Appeals, denying the variance, constitutes a taking without just compensation in violation of the United States and Connecticut Constitutions.
The second count alleges that the same conduct of the Zoning Board of Appeals constitutes a deprivation of the plaintiff's constitutional rights, in violation of 42 U.S.C. § 1983.
First Special Defense
The first special defense states that the three-acre zoning regulation in Easton has been in effect since June 25, 1941; that the developer carved out a nonconforming lot after the regulations were in place; and that Hunt's predecessors in interest bought directly from the developer. The defense also states that Hunt's predecessors, the Belknaps, applied in 1965 for a variance, which was denied. Hunt represented the Belknaps at the hearing and, after the variance was denied, in the appeal. Therefore, the defendant argues, Hunt was aware that the property did not conform and that he could not build on it. CT Page 7271
Hunt argues that actual knowledge is irrelevant because the present case is not a zoning appeal, but rather a civil action for damages and to enforce rights secured by the state and federal constitutions.
Hunt cites to First Evangelical Lutheran Church of Glendale v. Los Angeles County, 482 U.S. 304 (1986), among other cases, for the proposition that a governmental act can constitute a taking that requires compensation. "[G]overnment action that works a taking of property rights necessarily implicates the `constitutional obligation to pay just compensation.'" Id. at 315. "We have recognized that a landowner is entitled to bring an action for inverse condemnation as a result of `the self-executing character of the constitutional provision with respect to compensation.'" Id. "[T]he Court has frequently repeated the view that, in the event of a taking, the compensation remedy is required by the Constitution." Id. at 316. By construing the application of the Easton zoning regulation as a taking, Hunt seeks to distinguish his case from those in which the courts denied variances because of self-inflicted hardships. See, e.g., Abel v. ZBA, 172 Conn. 286,289 (1977) (self-created hardship is not a proper ground for a variance): Booe v. ZBA, 151 Conn. 681, 683 (1964) (sale of portion of land tract that creates a nonconformity in the remainder constitutes self-created hardship); Spalding v. ZBA,144 Conn. 719 (1957).
His argument, however, does not protect him from the fact that by purchasing with knowledge of the nonconformity, he assumed the risk that he may not get a variance. Abel v. ZBA, supra at 289-290. Hunt argues that his awareness of the nonconformity is irrelevant because the situation involves a taking. This argument presumes that there was, in fact, a taking despite case law to suggest that the ZBA's actions may not have been unconstitutional. See, e.g., Raybestos-Manhattan, Inc. v. PZC, 186 Conn. 466-471 (1982) ("Where reasonable and impartial, a commission's power to regulate the use of land does not constitute a taking without due process of law or just compensation."); also Manor Development Corp. v. Conservation Commission, 180 Conn. 692, 695-96 (1980) (a mere decrease in total value of the property does not indicate there has been a taking; property may be subject to reasonable restraints that do not constitute a taking).
There is certainly case law holding that the application of regulations can constitute a taking. See, e.g., Chevron Oil Co. v. ZBA, 170 Conn. 146, 151 (1976) ("An ordinance which permanently restricts the use of land for any reasonable purpose . . . goes beyond permissible regulations and amounts to `practical confiscation'"); see also Becciaroli v. Commissioner CT Page 7272 of Environmental Protection, 168 Conn. 349, 355-56 (1975); Horwitz v. Waterford, 151 Conn. 320 (1964) (an ordinance requiring building lots to abut accepted streets, enacted 14 years after the plaintiff bought the subject land, was held to create a taking as applied).
However, even if application of the regulation did constitute a taking, Hunt's knowledge of the nonconformity would still be germane. In Luf v. Town of Southbury, 188 Conn. 336,348 (1982), the Court stated: "In consideration of whether there has been a constitutional taking, it is the circumstances at the time of the taking, not at some future hypothetical time, that are dispositive." In White v. Shugrue, 178 Conn. 710, 713
(1979), the Court defined when a confiscation occurs as follows:
 Inverse condemnation or a constitutional taking may be complete without an actual, physical appropriation of property. Laurel, Inc. v. State, 169 Conn. 195, 201, 362 A.2d 1383: Slavitt v. Ives, 163 Conn. 198, 207, 303 A.2d 13; Stock v. Cox, 125 Conn. 405, 419, 6 A.2d 346, see 2 Nichols, Eminent Domain (3d Ed.) 6.1(1). This court observed that when property cannot be utilized for any reasonable and proper purpose, as where the economic utility of the property has, for all practical purposes, been destroyed, a confiscation or taking in the constitutional sense has occurred. Laurel, Inc. v. State, supra, 201; Vartelas v. Water Resources Commission, 146 Conn. 650, 153 A.2d 822. Id.
Under the procedural posture of the plaintiff's case, Hunt's knowledge is relevant because, under the aforementioned definitions, the taking, if any, occurred at the time the land's value was destroyed in 1965, when the Belknaps' application and subsequent appeal were dismissed. Therefore, the land would already have been taken. i.e., of limited value, when the Hunts bought it in 1968. Therefore, Hunt would have purchased property of limited value, with full knowledge of that value. Therefore, Hunt would be unable to argue that the value of the property had been compromised during his ownership.
As such, the First Special Defense should stand and the Motion to Strike it be denied.
Second Special Defense
The second special defense alleges that the nonconforming CT Page 7273 lot was created by Francis Seymour, who conveyed to Steve Dusick, who conveyed to the Belknaps, who, in turn, conveyed to the Hunts. This defense relies on the rule that a board will not grant a variance when the nonconformity was created by the owner or his predecessor in title. Johnny Cake, Inc. v. ZBA,180 Conn. 296, 300 (1980).
Hunt argues that this rule is an aberration, at least as it pertains to hardships created by predecessors in interest. Plaintiffs' Memorandum of Law, pp. 13-16. Hunt has failed, however, to cite any contrary law. Rather, he argues primarily on policy grounds. Plaintiffs' Memo, pp. 14-16, 21-22. Although he also invokes property rights under both the state and federal constitutions, see e.g. First Lutheran Church,482 U.S. at 315-317; he has offered no law to show the Board's conduct constituted a taking.
Absent any law that reverses or overrules the case law regarding self-created hardships, Hunt has failed to show that the second special defense is legally insufficient. Therefore. the court must deny the motion to strike as to the second special defense.
Third Special Defense
The third special defense states that the Board's conduct did not decrease the value Hunt paid for the property because he bought it at a reduced price, knowing that (a) the property was less than three acres and (b) that the Board had previously denied the Belknaps' application. Hunt argues that the alleged taking is a fact that must be presumed in testing legal sufficiency, such that this special defense must be tested against the legal measure of compensation. Plaintiffs' Brief, pp. 28-29.
There is a fatal flaw in this analysis however. Whether or not the Board's conduct constituted a taking is a legal conclusion, which is not admitted for purposes of a motion to strike. Mingachos v. CBS, Inc., 196 Conn. 91 108 (1985). A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." Id. (Italics in original.); see also Alarm Applications Co. v. Simsbury Volunteer Fire Co., 179 Conn. 541,545 (1980).
This defense would be relevant as it bears on the buyer's knowledge of the true value of the property. See Chapman v. ZBA, 23 Conn. App. 441, 443 (1990), in which the court deemed
This defense would be relevant as it bears on the buyer's CT Page 7274 knowledge of the true value of the property. See Chapman v. ZBA, 23 Conn. App. 441, 443 (1990), in which the court deemed evidence of minimal value sufficient to support the ZBA's finding that no taking occurred. "The plaintiff purchased a lot at a minimal price because it was nonconforming under then I current zoning regulations. The denial of the variance; maintains the status quo." Id. Therefore, this special defense should also stand.
Fourth Special Defense
The fourth special defense states that Hunt's present civil suit is barred by res judicata, because the allegations and issues are the same as those raised in his prior administrative I appeal, Hunt v. ZBA of Easton, No. CV 0234141S. The court (McGrath, J.) dismissed Hunt's appeal on July 2, 1988 on the basis of the self-created hardship, without ruling on whether the Board's conduct rose to the level of a taking. The special defense also notes that Hunt failed to appeal to the appellate court.
Hunt concedes that the current civil suit involves the same transaction as the prior appeal. He argues, however, that the court's power on appeal is limited to determining whether the Board acted illegally, arbitrarily or in abuse of its discretion. Plaintiffs' Brief, pp. 39-40. See also Conn. Gen. Stat. 8-8. The only remedy the court can offer is to reverse, affirm, modify, or revise, with costs, the Board's decision. See 8-8 (1). In the present case, Hunt argues, the remedy he seeks is damages, which the court in an administrative appeal may not award. Because an appellant may not seek damages from the agency, Hunt says, he is not now barred by the doctrine of res judicata.
In Corey v. Avco-Lycoming Division, 163 Conn. 309, 317- 318 (1982), the court discussed res judicata as follows:
 A final judgment on the merits is conclusive on the parties in an action and their privies as to the cause of action involved. If the same cause of action is again sued on, the judgment is conclusive with respect to any claims relating to the cause of action which were actually made or might have been made,. Bridgeport Hydraulic Co. v. Pearson, 139 Conn. 186, 196, 91 A.2d 778; Lehrman v. Prague, 115 Conn. 484, 490, 162 A. 15; Scott v. Scott, 83 Conn. 634, 638, 78 A. 314. Collateral estoppel is that aspect of res judicata which is concerned with the effect of a final judgment CT Page 7275 on the subsequent litigation of a different cause of action involving some of the issues determined in a former action between the parties. Brockett v. Jensen, 154 Conn. 328, 337, 225 A.2d 190. "(1) Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action . . . . (2) A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to questions of fact not actually litigated and determined in the first action. Restatement, Judgments 68." Brockett v. Jensen, supra. We have held that res judicata and collateral estoppel depend on the existence of a valid final judgment by a court of competent jurisdiction. Waterbury Savings Bank v. Danaher, 128 Conn. 78, 92, 20 A.2d 455; Ruocco v. Logiocco, 104 Conn. 585, 595, 134 A. 73. The question is raised as to the propriety of using the decision of an arbitration panel as a prior adjudication for the purposes of res judicata. Despite frequent statements which indicate acceptance of the proposition that the doctrine of res judicata is not applicable where the earlier decision was made, not by a court, but by an administrative agency, or that the doctrine does not ordinarily apply to decisions of administrative tribunals, there is a wealth of reason and authority for the application of that doctrine, or a similar doctrine, to the determinations of an administrative agency in a proper case, generally where the determinations are made for a purpose similar to those of a court and in proceedings similar to judicial proceedings. In any event, the doctrine of res judicata may apply to a judgment rendered by a court on review of a decision made by an administrative body. 46 Am.Jur.2d, Judgments, 455.
Because only issues that "were actually made or might have been made" are barred in subsequent litigation id., it is clear that a claim for damages that could not have been brought before is not barred in the instant action. It is also submitted, moreover, that the taking issue is not now precluded because the court (McGrath, J.) in the prior appeal never reached the CT Page 7276 question.
Therefore, the Fourth Special Defense is hereby stricken.
Fifth Special Defense
This special defense argues again that Hunt's claims are barred by res judicata because he failed to take an appeal to the appellate court. The defendant Board argues that because Hunt failed to raise a claim under 42 U.S.C. § 1983 before the superior court (McGrath, J.) on appeal, he is precluded from doing so now.
Section 1983 states that any person who deprives another of "rights, privileges, or immunities secured by The Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." the United States Supreme Court has determined that "the basic purpose of a 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights." Carey v. Piphus, 435 U.S. 247, 254 (1977). The court even noted that in some cases exemplary or punitive damages are appropriate. Id. at 257, n. 11.
The remedy for a 1983 claim is damages, which are precisely what Hunt seeks in his complaint. Because Hunt could not have sought damages from the Board or on appeal in the first instance, (See discussion on fourth special defense), he could not have raised his 1983 claim earlier. Therefore, the Fifth Special Defense is also stricken.
Moreover, if a 1983 claim is merely the mechanism for mounting a constitutional attack on the regulations, this independent action may actually be Hunt's proper recourse. "The rule extant under our zoning cases is that a party who has sought to avail himself of a zoning ordinance by making an application thereunder is precluded in the same proceeding from raising the question of its constitutionality." Bierman v. Westport PZC, 185 Conn. 135, 139 (1981). The proper channel for a constitutional attack in such a case is an independent proceeding. Id. at 140.
Sixth Special Defense
This special defense states that Hunt failed to take a timely appeal to the Connecticut Supreme Court as required by Conn. Gen. Stat. 8-8(o). However, there is no such requirement in the statute.
Section 8-8(o) (designated as 8-8(g) at the time of Hunt's CT Page 7277 appeal) states as follows:
 (o) There shall be no right to further review except to the appellate court by certification for review, on the vote of two judges of the appellate court so to certify and under such other rules as the judges of the appellate court establish. The procedure on appeal to the appellate court shall, except as otherwise provided herein, be in accordance with the procedures provided by rule or law for the appeal of judgments rendered by the superior court unless modified by rule of the judges of the appellate court.
That statute contains no language to suggest the normal course of appeals is to be suspended for administrative matters. Therefore, the court strikes this defense. See also Practice Bk. 4000 Supreme Court Appellate Rules.
Seventh Special Defense
This defense states that Hunt's action is now barred because he failed to take "this appeal" to the superior court within 15 days after the Board published notice of its decision. See Conn. Gen. Stat. 8-8(b). This action, however, is not an appeal.
Section 8-8(b) applies only to administrative appeals. The present action, however, is a civil proceeding in which Hunt seeks a remedy, i.e., damages not available in administrative appeals. (See Complaint.) Therefore, the 15-day rule does not apply, and the court strikes this special defense.
Eighth Special Defense
In this special defense, the Board asserts that it denied the Belknaps' application for a variance in 1965, and that Hunt's application for a variance was similar to the Belknaps'. The Board contends that it cannot reverse itself because "there were no material changes of conditions or circumstances which would have warranted the reversal . . ."
A zoning board of appeals cannot grant a second application for a variance after it denied a similar, earlier application for the same property. Laurel Beach Ass'n v. Milford ZBA,166 Conn. 385, 387 (1974); see also St. Patrick's Church Corp. v. Daniels, 113 Conn. 132, 140 (1931). The board can only reverse itself if there has been a material change of circumstances or if other considerations have intervened that affect the merits CT Page 7278 and no vested rights have arisen. Wright v. ZBA, 174 Conn. 488,492 (1978).
Hunt argues that "`other considerations materially affecting the merits' have intervened." Plaintiffs' Memo Re: Eighth Special Defense, dated May 28, 1991, p. 2. These considerations, he says, include an alleged change in the law culminating in First Lutheran Church, 482 U.S. at 315 (see discussion of First Special Defense). Once again the issue of compensation becomes relevant when a taking has been proven and so far, Hunt has merely alleged, not proved, such a taking.
As to the law regarding a Board's power to reverse itself, Hunt has offered no new cases to to show that the rules have changed. Therefore, because the Board has raised the rule by way of special defense, it bears the burden to show that there were no "changes or other considerations." Any party "who pleads a special defense `Presumably does so with the idea of making his defense appear to be stronger and more aggressive, and invites the court to charge that he has assumed the affirmative upon that particular issue . . .'" Atlantic Richfield Co. v. Canaan Oil Co., 202 Conn. 234, 237 (1987); see also Practice Book 164.
Therefore, the issue presents a question of fact that is not amenable to a motion to strike. Therefore, this special defense should stand and the Motion to Strike is denied.
Based on the foregoing, the Court strikes the Fourth, Fifth, Sixth, and Seventh Special Defenses; and lets stand the First, Second, Third, and Eighth Special Defenses.
KATZ, JUDGE