[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR JUDGMENT OF DISMISSAL
The plaintiff, by writ summons and complaint, dated July 17, 1989, commenced this action against the defendants. Subsequently, by amended revised complaint, dated December 18, 1990, the plaintiffs claims devolved into four counts reflecting two major theories of recovery. Counts one and two of the plaintiff's complaint contends that the defendants actions deprived the plaintiffs of dominion and control over its property, which actions resulted in a de facto taking of the property. The third and fourth counts allege that the defendants' actions tortiously interfered with the plaintiff's contractual and business relations.
At the commencement of the trial, the court ordered that the proceedings be bifurcated and that the declaratory, liability and causation issues be tried first and the damage issues, if necessary, be tried later.
The plaintiff, Progress Park Associates (PPA) is a Connecticut general partnership with its offices in the town of Cromwell. Its principal business is the acquisition, development, management and marketing of a certain industrial zoned property located in Cromwell, Connecticut.
The defendant, Connecticut Resources Recovery Authority (CRRA) is a governmental agency created pursuant CT Page 11569 to Conn. Gen. Stat. Sec. 22a-261, et seq. CRRA is charged with acquiring, developing and managing waste disposal systems within the state of Connecticut. Conn. Gen. Stat. Sec. 22a-266(a)(7) authorizes CRRA to acquire real property by purchase, gift, transfer or condemnation. Conn. Gen. Stat. Sec. 22a-265(4) allows that lawsuits may be brought by or against CRRA.
Trial on the plaintiffs' revised amended complaint, dated December 18, 1990, commenced on September 30, 1992. On November 5, 1992, the plaintiff rested. Thereupon, the defendant, pursuant to Prac. Book Sec. 302, moved for judgment of dismissal for failure of the plaintiff to make out a prima facie case on any of the four counts of the complaint.
This memorandum is the court's response to said motion for judgment of dismissal.
Prac. Book Ssc. 302 provides as follows: "If, on the trial of fact in a civil action tried to the court, the plaintiff has produced his evidence and rested his cause, the defendant may move for judgment of dismissal, and the court may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case. . ."
The plaintiff produced evidence at the trial to support the following facts.
On December 2, 1988, the plaintiff took title to certain industrially zoned property consisting of approximately 40 acres located in the town of Cromwell, Connecticut. The plaintiff entered into several sales agreements with buyers for the sale of approved lots within the parcel which had previously been approved by the Cromwell Planning and Zoning Commission as as industrial subdivision containing 21 lots.
In late 1988, the defendant considered a portion of the subject property to be a preferred site for a proposed trash to energy plant. The interest of the defendants in the plaintiff's property received a great deal of attention in the local press on or about December 5, 1988. However, no final determination of the site for the proposed project had been made at the time and the plaintiff's CT Page 11570 preliminary view was subject to further on-site evaluations. Additionally, the plaintiff's board of directors, whose approval was necessary to acquire the site, had not acted to acquire the property. Two other sites located in Portland, Connecticut were also under active consideration at that time. On December 8, 1988, as required by law, the defendant duly published its TEFRA notice indicating its intention to construct a facility in either Cromwell or Portland.
The defendant at no time assumed dominion and control of the plaintiff's property. Nor did the defendant ever discourage the plaintiff from further development of their subdivision, in fact, the defendant expressly stated to the plaintiffs that they should continue to carry on with marketing their property.
In fact, the plaintiffs did continue to market the subject property and indeed sold certain of the lots subsequent to the publicity surrounding the defendant's interest in the property.
The defendant's actions and statements consistently demonstrated that multiple sites were under consideration and that no final determination was ever made that the plaintiffs' land was to be taken.
The defendant was engaged in a governmental planning process and never arrived at a fixed and irreversible determination that the plaintiffs' land was the ultimate site to be chosen.
The plaintiff exercised all of its ownership rights, free from any "dominion and control" by the defendant. As late as April, 1989, the plaintiff, after hearings before the zoning and wetland authorities, received final approval for a re-subdivision of the property. The plaintiff in June, 1989, after proceeding before the State Traffic Commission, received approval for an additional 150,000 square feet of development. The defendant at no time deprived the plaintiff of the use and enjoyment of its property.
AS TO COUNTS ONE AND TWO, INVERSE CONDEMNATION
A defendant is entitled to a judgment of dismissal under Practice Book Sec. 302 when the plaintiff has CT Page 11571 failed to make out a prima facia case. In Gulycz v. Stop 
Shop Cos., 29 Conn. App. 519, 523 (1992), the appellate court stated, "When ruling on a motion to dismiss, the trial court is required to view the evidence in the light most favorable to the plaintiff and to draw every reasonable inference in his favor. Whether prima facie case has been made is a question of law for the court. If, after reviewing the evidence in the light most favorable to the plaintiff, the court cannot reasonably find the essential issues on the complaint in his favor, a judgment of dismissal is appropriate."
Also, "While a plaintiff is entitled to every favorable inference that may be legitimately drawn from the evidence, and has the same right to submit a weak case as a strong one, the plaintiff must still sustain the burden of proof on the contested issues in the complaint and the defendant need not present any evidence to contradict it. The general burden of proof in civil actions is on the plaintiff, who must prove all the essential allegations of the complaint." Id.
The plaintiff alleges a defacto taking and that it was totally and permanently deprived of the use and enjoyment of its property.
The law on this subject is clear and has been repeatedly and strictly followed. There can be "no taking in a constitutional sense unless the property cannot be utilized for any reasonable and proper purpose." Tamm v. Burns, 222 Conn. 280, 284 (1992); Laurel, Inc. v. State,169 Conn. 195, 205 (1975); Wright v. Shugrue, 178 Conn. 710, 714
(1979); Horak v. State, 171 Conn. 257, 261 (1976). For a taking to have occurred "the economic utilization of the land" must have been "for all practical purposes, destroyed." Tamm, supra, 284. Laurel, supra, 201; Wright, supra, 713; Horak, supra, 261.
The plaintiff's own evidence indicates that the economic value of the property was not destroyed. The plaintiff continued to market its property and actually sold certain lots long after the defendant's interest in the property was disclosed.
Some buyers, for business reasons may have decided not to purchase because of the potential siting of CT Page 11572 the defendant's trash to energy plant. However, the United States Supreme Court in Kirby Forest Land v. United States,467 U.S. 1, 15 declared "even a substantial reduction in the attractiveness of property to potential purchasers does not entitle the owner to compensation under the fifth amendment". The court went on, "Impairment of the market value of real property incident to otherwise legitimate government action ordinarily does not result in a taking." Connecticut, agreeing, stated in Tanm v. Burns, supra, 286, "An owner is not entitled to compensation for the diminution in value of his property resulting from a valid exercise of the police power."
In Textron, Inc. v. Wood, 167 Conn. 334 (1974), our Supreme Court discussed whether public planning may constitute an inverse condemnation. The court held that an action for inverse condemnation requires proof of "substantial interference with private property which destroys or nullifies its value or by which the owners' right to its use or enjoyment is in a substantial degree abridged or destroyed." Id. 346. The court also held that it is "essential" to any such claim that the showing of "substantial interference" be sufficient to demonstrate that "the state's intent to condemn the property in question has become fixed and irreversible." Id. 348. The court also stated, "Mere planning by a government body in anticipation of the taking of land for public use and preliminary steps taken to accomplish this without the statutory filing of condemnation proceedings and without physical taking is not actionable by the owner." Id. 346. (Emphasis added).
Therefore, the court, after a plenary review of the evidence in the light most favorable to the plaintiff, concludes, as a matter of law, that the plaintiff has not made out a prima facie case and consequently, the court cannot reasonably find the essential issues of counts one and two in its favor. A judgment of dismissal of counts one and two of the plaintiff's revised amended complaint should issue.
AS TO COUNTS THREE AND FOUR, TORTIOUS INTERFERENCE
The plaintiff asserts in counts three of its complaint that the defendant "intentionally, maliciously, fraudulently, or through misrepresentation or through CT Page 11573 intimidation has failed to either condemn purchase or release plaintiff's property, subsequent to its identification of the property as the target for a trash to energy plant." In its fourth count the plaintiff alleges "C.R.R.A.'s actions subsequent to its December 5, 1988 announcement have substantially interfered with P.P.A.'s legal rights to the property and C.R.R.A. has not paid P.P.A. to compensate for such interference. C.R.R.A.'s substantial interference with plaintiff's property consist, among other matters, of interference with plaintiffs' power of disposition over its property."
The allegation in counts three and four of the complaint constitute claims that the defendant tortiously interfered with the plaintiffs' contractual relations with its prospective buyers.
A claim of tortious interference requires proof of three essential elements: first, that the claimed relationship existed; second, that the defendant, knowing of that relationship, intentionally and tortiously sought to interfere with it; and third, that the plaintiff suffered actual loss as a result of the alleged interference. Solomon v. Aberman, 196 Conn. 359, 364 (1985); Blake v. Levy,191 Conn. 257, 261 (1983); Harry A. Finman Son, Inc. v. Connecticut Truck and Trailer Service, Co., 169 Conn. 407, 415
(1975).
Nowhere in the plaintiffs' evidence was there any showing that the defendant had any contact with any of the parties with whom the plaintiff had any business dealings. If the plaintiffs potential buyers acted upon any information, they obtained same from sources other than the defendant.
We note that under the mortgage agreement that the plaintiffs had with their lender, they were required to have a substantial amount of sales under contract before they closed on the property. Apparently, the plaintiffs represented that they conformed to this requirement and did have the needed amount of sales under contract. In fact, one of the buyers, upon gaining knowledge of the interest of the defendant in the property, immediately filed its sales contract on the land records in order to give notice of its interest. We note, further, that despite the fact that the CT Page 11574 plaintiff and its buyers had apparently binding contract for the sale of certain lots, the plaintiff voluntarily rescinded its contracts with the buyers. Such voluntary relinquishment cannot be attributed to any alleged misconduct by the defendant.
"It is essential to a cause of action for unlawful interference with business that it appear that, except for the tortious interference of the defendant, there was a reasonable probability that the plaintiff would have entered into a contract or made a profit." Selby v. Pelletier, 1 Conn. App. 320, 323 (1984) (citing Goldman v. Feinberg, 130 Conn. 671, 674-75 (1944). However, in this case, in addition to the fact that the plaintiff never attempted to enforce its apparently binding sales contracts, other elements appear to have affected the lot sales. Testimony indicated such other factors as the failure of the defendant to promptly construct a road, the changing market, deteriorating economic conditions, changing individual business needs, inability or unwillingness to obtain financing, inability or unwillingness to find a tenant contributed to the lack of sales.
Further, a plaintiff claiming intentional interference bears the burden of proving that the defendants' action was both intentional and tortious. Blake v. Levy, supra, 261, wherein the court cited Restatement (Second) of Torts, "One who intentionally and improperly interferes with the performance of a contract. . . . between another and a third person by inducing or otherwise causing the third party not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other for failure of the third person to perform the contract." 4 Restatement (Second) of Torts Sec. 766 (1979).
The plaintiff offered no evidence to prove that the defendant intentionally sought to interfere with any business relationship that may have existed between the plaintiff and other parties, and, in so doing that the defendant acted tortiously.
The actions taken by the defendant; meetings, hearings, publications and notices are all either mandated by law or were performed in the ordinary course of governmental procedures in order to inform the public and affected CT Page 11575 entities and to seek their input in order to assist in the final determination of what action to take in the light of all the circumstances existing with regard to any project.
Here, there is no evidence that the defendant acted to interfere with the plaintiffs' business activities. To the contrary the defendant expressly advised the plaintiff to continue to market the property, not to restrict its business plans or efforts, and not to act under the assumption that the defendant would acquire some or all of its property.
The plaintiff offered no evidence that the conduct of the defendant was tortious. An essential element of a claim of tortious interference is that the actors' behavior must be improper. Blake v. Levy, supra, 261. In Blake, the court stated such improper behavior would include improper motives, improper means, and the violation of a statute regulation, recognized rule of common law, or established trade or professional standard. Also, included in the Blake opinion, improper means were defined as violence, threats or other intimidation, deceit or misrepresentations, bribery, unfounded litigation, or disparaging falsehood. No such factors were evident in the plaintiffs' evidence.
Therefore, the court, after a plenary review of the evidence in the light most favorable to the plaintiff, concludes, as a matter of law, that the plaintiff has not made out a prima facie case of tortious interference and consequently, the court cannot reasonably find the essential issues of counts three and four in its favor. A judgment of dismissal of counts three and four of the plaintiffs' revised amended complaint should issue.
In summation, the court after a plenary review of the plaintiffs' evidence in a light most favorable to the plaintiff reveals that the plaintiff has failed to establish a prima facie case of either de facto condemnation or tortious interference. The evidence clearly establishes that the defendant never assumed dominion and control over the premises, did not act in such a manner as to destroy or nullify its value, and did not abridge or or destroy the plaintiffs' right to the use and enjoyment of its property. The evidence indicates to the contrary, ie, that the plaintiff CT Page 11576 continued to re-subdivide the property, seek traffic approvals and actually sold certain lots after the defendants' interest in the property became public. And, there was a complete lack of evidence proffered by the plaintiff to sustain a prima facie case of tortious interference against the defendant.
Accordingly, a judgment of dismissal, with costs, may enter, for the defendant and against the plaintiff, on all four counts of the plaintiffs' revised amended complaint dated December 18, 1990.
SPALLONE STATE TRIAL REFEREE